IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 3, 2015 Session


**ADAM ELLITHORPE ET AL. V. JANET WEISMARK**


**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Davidson County**
**No. 13C2775     Thomas W. Brothers, Judge**

_____

**No. M2014-00279-SC-R11-CV – Filed October 8, 2015**

_____


We granted review in this health care liability action to decide whether the trial court erred by failing to apply this Court's analysis in Estate of French v. Stratford House, 333 S.W.3d 546 (Tenn. 2011), in determining whether it was necessary for plaintiffs to provide pre-suit notice and a certificate of good faith under the Tennessee Health Care Liability Act ("THCLA"), Tenn. Code Ann. § 29-26-101 et seq. We hold that the Tennessee Civil Justice Act of 2011, which amended the THCLA, statutorily abrogated our decision in Estate of French by providing that "[a]ny such civil action or claim is subject to [the THCLA] regardless of any other claims, causes of action, or theories of liability alleged in the complaint." Because it is undisputed that the plaintiffs in this case failed to provide pre-suit notice or file a certificate of good faith, the judgment of the Court of Appeals is reversed and the judgment of the trial court dismissing the plaintiffs' complaint with prejudice is reinstated.


**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals**
**Reversed; Judgment of the Trial Court Reinstated**


CORNELIA A. CLARK, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and GARY R. WADE, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

John F. Floyd and Daniel C. Todd, Nashville, Tennessee, for the appellant, Janet Weismark.

Connie Reguli, Brentwood, Tennessee, for the appellees, Adam Ellithorpe, Ashley Ellithorpe, and M.L. (a minor).

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Alexander S. Rieger and Paul Jordan Scott, Assistant Attorneys General, for the intervenor, State of Tennessee.

## OPINION

### I.  Factual and Procedural Background

On July 11, 2013, Adam and Ashley Ellithorpe ("Parents")[1] filed this action against Janet Weismark ("Ms. Weismark"), a licensed clinical social worker, alleging that she had provided counseling services to their minor child, M.L., without obtaining Parents' valid consent.  Parents' complaint includes claims for negligence, negligence per se, and intentional infliction of emotional distress ("IIED").  Because this case comes to us in the posture of Ms. Weismark's motion to dismiss the complaint for failure to state a claim, we accept the allegations of the complaint as true.  See Brown v. Tenn. Title Loans, Inc., 328 S.W.3d 850, 853 (Tenn. 2010) (citing Leach v. Taylor, 124 S.W.3d 87, 90 (Tenn. 2004)).

Parents are the legal and biological parents of M.L.  However, on February 1, 2012, the Juvenile Court of Sumner County, Tennessee, allegedly issued an order ("Juvenile Court's order") giving Ronda and Eugene Melton (collectively "the Meltons") temporary custody of M.L.  The Meltons are the paternal great aunt and uncle of M.L.  Notably, the Juvenile Court's order is neither attached to Parents' complaint nor included in the record on appeal.[2]  Nevertheless, Parents' complaint alleges that the Juvenile

---

[1] Parents' minor child, who we will refer to as M.L. in this opinion to protect her anonymity, was also named as a plaintiff in this action.  For purposes of this appeal we will refer to the plaintiffs collectively as "Parents."

[2] At oral argument, Parents' counsel expressed concern about disclosing a juvenile court record as such records are placed under seal by statute.  See Tenn. Code Ann. § 37-1-153(d)(1) (2010) ("Except as otherwise permitted in this section, it is an offense for a person to intentionally disclose or disseminate to the public the files and records of the juvenile court, including the child's name and address.").  However, Tennessee Code Annotated section 37-1-153(a)(5) provides that juvenile court records are open to inspection, "[w]ith permission of the court, [to] any other person or agency or institution having a legitimate interest in the proceeding or in the work of the court."  Thus, Parents' counsel should have sought permission from the juvenile court to file a copy of the order under seal in the Circuit Court along with the complaint.  See Tenn. R. Civ. P. 10.03 ("Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof *shall* be attached to the pleading as an exhibit." (emphasis added)).  Having failed to attach the order to the complaint or include it in the record before the trial court, Parents' counsel should have filed a motion to

Court's order gave the Meltons authority to make medical decisions for M.L. However, the order also allegedly provided that Parents were to "be kept informed of counseling progress and be allowed to participate, including counseling. . . ." Further, Parents allege that the Juvenile Court's order gave them the right to receive copies of M.L.'s medical, health, and other treatment records directly from the physician or health care provider who provided the treatment. Moreover, according to Parents' complaint, "the custodian [Ms. Melton] was admonished by the [Juvenile] Court to work together with [parents] in support of reuniting [parents] with [M.L.]"

Parents' complaint alleges that on June 11, 2011, Ms. Weismark completed an intake form, signaling the beginning of Ms. Weismark's counseling with M.L. According to Parents, they were completely unaware that Ms. Weismark had begun counseling M.L. because they were never allowed to participate in the counseling. Ms. Weismark allegedly continued to hold counseling sessions with M.L. without informing Parents until at least April 9, 2013, but Parents believe that M.L. was still in counseling at the time they filed their complaint against Ms. Weismark. Consequently, Parents allege that Ms. Weismark "[was] negligent in providing health services without following the parameters of the court order by notifying [parents] and allowing them to participate in said counsel [sic]."

Parents' complaint further asserts that they first became aware of M.L.'s counseling sessions with Ms. Weismark on April 10, 2013, when the assigned Guardian Ad Litem "let the information slip out." Thereafter, Parents assert that the Guardian Ad Litem "was asked to disclose the name and phone number of the counselor. He reluctantly gave the name of [Ms. Weismark] and her phone number."

Parents further assert that, after they became aware that counseling was occurring, they asked Ms. Weismark to provide them with a copy of M.L.'s treatment records:

> [A] phone call was made to Ms. Weismark's office and she was asked to provide a complete copy of [M.L.'s] records to [Parents] and was told that [Parents] would come by to pick up the records. She was reluctant and stated that she would need $25 to pay for the records. She was told that

---

supplement the record in the appellate court pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure and complied with Rule 15(f) of the Rules of the Court of Appeals of Tennessee in filing the Juvenile Court's order. See Tenn. Ct. App. R. 15(f) ("Documents made confidential or sealed pursuant to a statute or rule, including those records and briefs filed in appeals from juvenile courts subject to Tenn. Ct. App. R. 14, shall contain a prominent notation on their cover stating that they are confidential or sealed and indicating the authority for such protection."). Parents made no attempt to supplement the record with the Juvenile Court's order before the Court of Appeals or this Court, even though the Court of Appeals noticed and lamented its absence.

would be fine.

According to Parents, Ms. Weismark called back "within [twenty] minutes" and left a message that she had been "advised not to give out the records" but would not respond to further inquiries about who had advised that the records be withheld.

Parents assert that they received Ms. Weismark's treatment records only after this action was initiated and a subpoena was issued by the trial court. Parents contend that Ms. Weismark did not have a copy of the Juvenile Court's order as a part of her records for M.L. and that she neither confirmed Ms. Melton's identity nor verified any court-ordered restrictions on Ms. Melton's authority. However, Parents allege that Ms. Weismark knew that Ms. Melton was not M.L.'s biological parent because she was listed as a "great aunt" on the intake form. According to Parents, Ms. Weismark's actions "demonstrate[] her reckless disregard" for their rights.

Parents also state that Ms. Weismark wrote a letter on January 16, 2013, recommending that they be denied contact with M.L.[3] According to Parents' complaint, this recommendation directly contravened a "current court order for visitation."

Finally, because of this allegedly "secret" counseling, Parents state that M.L. has been "harmed emotionally in not being allowed to counsel" with them and that they too have suffered emotional distress. Parents contend that the counseling is the direct and proximate cause of these injuries. Further, Parents allege

> that the proof will show that [M.L.] has suffered severe emotional harm from being forcefully kept separated from her [P]arents. In fact, in the notes of Ms. Weismark, it shows that [M.L.] calls [Ms. Melton] "mommy" and Ms. Weismark has done nothing to correct this. [Ms. Melton] is NOT the "mommy" of [M.L.] and should not be substituted in [M.L.'s] mind as her parent. This is evidence of the deep psychological damage that has occurred to [M.L.] while in counseling with Ms. Weismark.

(Capitalization in original.)

On August 15, 2013, Ms. Weismark answered Parents' complaint by denying that Parents were entitled to any relief. She also asserted several affirmative defenses in her

---

[3] Ms. Weismark admitted in her answer to Parents' complaint that "in a January 16, 2013 correspondence . . . she recommended that [M.L] have no further visits with her [P]arents at this time because of her [P]arents' erratic and abusive behaviors and [M.L.'s] fearful and confused feelings. In addition, [] [Ms. Weismark] recommended that an investigation should be done to assess the [P]arents' parenting skills and home environment." Neither Parents' complaint nor Ms. Weismark's answer identifies the recipient of this correspondence.

-4-

answer, including that Parents failed to comply with the pre-suit notice and certificate of good faith requirements of the THCLA. See Tenn. Code Ann. §§ 29-26-121 to -122 (2012 & Supp. 2014).

On November 15, 2013, Ms. Weismark filed a motion to dismiss, also based on Parents' failure to comply with the THCLA's procedural requirements. Parents filed their response to the motion to dismiss on November 27, 2013, arguing that their claims were not subject to the THCLA's procedural requirements because their claims sounded in ordinary negligence.

On December 13, 2013, the trial court held a hearing on Ms. Weismark's motion to dismiss. An order was entered on January 9, 2014, dismissing all of Parents' claims with prejudice. In its verbal ruling on Ms. Weismark's motion to dismiss, the trial court stated that the THCLA was "very broad" and encompassed Parents' claims because they related to the provision of "health care services" by a "health care provider" as those terms are defined by statute.[4] See Tenn. Code Ann. § 29-26-101.

On February 7, 2014, Parents filed a notice of appeal raising only one issue, which was restated[5] by the Court of Appeals for clarity as follows: "Whether the trial court erred in dismissing [Parents'] negligence, negligence per se, and IIED claims for failure to comply with the written notice and certificate of good faith requirements of the THCLA." Ellithorpe v. Weismark, No. M2014-00279-COA-R3-CV, 2014 WL 5511773, at *3 (Tenn. Ct. App. Oct. 31, 2014).

The Court of Appeals, relying primarily on Estate of French v. Stratford House, held that the trial court had failed to utilize the correct analysis when determining if Parents' claims sounded in ordinary negligence or health care liability. Weismark, 2014

---

[4] We note that Parents filed a notice of no transcript citing Tennessee Rule of Appellate Procedure 24(b) and stating that "there is no transcript from the December 13, 2013 hearing." However, Tennessee Supreme Court Rule 26 governs the preparation of the record in this appeal. Local Rule 8(a) of the Twentieth Judicial District of Tennessee states, "The Sixth Circuit Court has been authorized by the Supreme Court to use audio-visual recordings as the official record of court proceedings pursuant to Supreme Court Rule 26." Tenn. 20th J. Dist. R. § 8(a); see also Tenn. Sup. Ct. R. 26 § 1.01. Section 2.01 of Tennessee Supreme Court Rule 26 defines "the term 'transcript' used in Rule 24, Tennessee Rules of Appellate Procedure," as including "an official electronic recording of court proceedings recorded and maintained in accordance with [Tennessee Supreme Court Rule 26]." Tenn. Sup. Ct. R. 26 § 2.01. Thus, because the official audio-visual recording of the December 13, 2013 hearing constitutes the transcript, Parents' notice that no transcript would be filed was in error.

[5] Parents stated the issue in their brief filed with the Court of Appeals as "[d]id the trial court err in dismissing the appellants' case with prejudice for failure to comply with T.C.A. § 29-26-101 et seq. when the cause of action is ordinary negligence?"

-5-

WL 5511773, at *10.  The Court of Appeals noted that in <u>Estate of French</u>, this Court "abandoned the broad 'gravamen of the complaint' test . . . in favor of 'a more nuanced approach' in which the trial court must examine the claims individually to determine whether they sound in ordinary negligence or health care liability."  <u>Weismark</u>, 2014 WL 5511773, at *9 (quoting <u>Estate of French</u>, 333 S.W.3d at 560).  The Court of Appeals further determined that the trial court had not considered the standard outlined in <u>Estate of French</u> and instead "relied on the gravamen of the complaint standard rejected in <u>Estate of French</u>" when dismissing the complaint.  <u>Id.</u> at *10.  Thus, the Court of Appeals vacated the trial court's order dismissing Parents' claims and remanded for reconsideration of the entire complaint "pursuant to the standard articulated in <u>Estate of French</u>."  <u>Id.</u>

We granted Ms. Weismark's Tennessee Rule of Appellate Procedure 11 application for permission to appeal.

## II. Standard of Review

A motion to dismiss for failure to state a claim is the proper method for challenging whether a plaintiff has complied with the THCLA's pre-suit notice and certificate of good faith requirements.  <u>Myers v. AMISUB (SFH), Inc.</u>, 382 S.W.3d 300, 307 (Tenn. 2012).  A motion to dismiss based upon Tennessee Rule of Civil Procedure 12.02(6) challenges "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence."  <u>Phillips v. Montgomery Cnty.</u>, 442 S.W.3d 233, 237 (Tenn. 2014) (quoting <u>Webb v. Nashville Area Habitat for Humanity, Inc.</u>, 346 S.W.3d 422, 426 (Tenn. 2011)).

A defendant filing a motion to dismiss "admits the truth of all the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action."  <u>Id.</u> (quoting <u>Webb</u>, 346 S.W.3d at 426 (alteration in original) (internal quotation marks omitted)). The resolution of such a motion is determined by examining the pleadings alone.  <u>Id.</u>

In adjudicating such motions, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences."  <u>Id.</u> (citing <u>Webb</u>, 346 S.W.3d at 426; <u>Cullum v. McCool</u>, 432 S.W.3d 829, 832 (Tenn. 2013)).  A motion to dismiss should be granted only if it appears that "'the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'"  <u>Webb</u>, 346 S.W.3d at 426 (quoting <u>Crews v. Buckman Labs. Int'l, Inc.</u>, 78 S.W.3d 852, 857 (Tenn. 2002)).  We review a lower court's decision on such a motion de novo without any presumption of correctness.  <u>Phillips</u>, 442 S.W.3d at 237 (citing <u>Cullum</u>, 432 S.W.3d at 832).

## III. Analysis

Ms. Weismark asserts that the Legislature's 2011 amendments to the THCLA precludes application of the "nuanced" approach found in Estate of French and that the Court of Appeals erred by reversing the trial court's dismissal of Parents' complaint and by remanding the case for analysis consistent with Estate of French. Conversely, Parents assert that Estate of French is still good law, and that under the Estate of French analysis, their claims sound in ordinary negligence instead of health care liability. Alternatively, Parents assert that, even if the THCLA is applicable to their claims, dismissal with prejudice is not compulsory. Finally, Parents assert for the first time before this Court a constitutional challenge to the THCLA.

### A. The Tennessee Health Care Liability Act

A brief history of the THCLA and its judicial interpretations is beneficial to our analysis. In 2008, Tennessee's Medical Malpractice Act[6] was amended, introducing new requirements into medical malpractice litigation. See Act of April 24, 2008, ch. 919, 2008 Tenn. Pub. Acts 434; see generally Rebecca C. Blair, Med-Mal Obstacles, 44 Tenn. B.J. 14 (2008). The 2008 amendment required a party initiating a medical malpractice claim to give sixty days' pre-suit notice to the implicated health care providers. See Tenn. Code Ann. § 29-26-121(a)(1) (Supp. 2008). Furthermore, the amendment contained a certificate-of-good-faith provision requiring a plaintiff filing a medical malpractice action, in which expert testimony was required, to file a certificate of good faith within ninety days of the filing of the initial complaint. Id. § 29-26-122. This certificate served to confirm that one or more experts had been consulted and provided a signed written statement of their belief that there was a good faith basis for filing the complaint. Id.

One year later, in 2009, the Act was again amended to clarify these new requirements. See Act of June 4, 2009, ch. 425, 2009 Tenn. Pub. Acts 472; see generally John A. Day, Med Mal Makeover: 2009 Act Improves on '08, 45 Tenn. B.J. 14 (2009). Tennessee Code Annotated section 29-26-121(a)(1) was amended to require that pre-suit notice only be given to persons or entities named as defendants in the action, see Tenn. Code Ann. § 29-26-121(a)(1) (Supp. 2009), and section 121(a)(2) was amended to specify what information was required to be included in the pre-suit notice. See id. § 29-26-121(a)(2). Additionally, Tennessee Code Annotated section 29-26-122 was amended to

---

[6] In 2011, pursuant to the Tennessee Civil Justice Act of 2011, Tennessee Code Annotated sections 29-26-115 through 122 and 202 of the Medical Malpractice Act were amended to replace the term "medical malpractice" with the term "health care liability." Tennessee Civil Justice Act of 2011, ch. 510 § 9, 2011 Tenn. Pub Acts 1505. It is important to note that because the title "Tennessee Medical Malpractice Act" and the term "medical malpractice" were used in the discussed statutes prior to 2011, the terms will continue to be appropriately used throughout this opinion.

require the filing of the certificate of good faith with the complaint instead of within ninety days after its filing. See id. § 29-26-122.

While the 2008 and 2009 amendments to the Tennessee Medical Malpractice Act established new procedural requirements for plaintiffs seeking to file medical malpractice actions, these amendments failed to sufficiently define a medical malpractice claim and left Tennessee courts to distinguish between claims sounding in ordinary negligence and those involving medical malpractice. In January 2011, this Court decided Estate of French, which provided a comprehensive and detailed analysis of the interaction between ordinary negligence principles and the Tennessee Medical Malpractice Act, as then enacted.

In Estate of French, the administratrix of the estate of a deceased nursing home resident brought a wrongful death suit against the nursing home alleging claims of ordinary negligence, negligence per se, and violations of the Tennessee Adult Protection Act. 333 S.W.3d at 549. The trial court granted partial summary judgment for the nursing home, holding that the Tennessee Medical Malpractice Act applied to the administratrix's ordinary negligence claims and precluded allegations of negligence per se or violations of the Tennessee Adult Protection Act. Id. at 549-50. The Court of Appeals affirmed, holding that "the gravamen of the case sounds in medical malpractice." Id. at 553 (internal quotation marks omitted). This Court granted the administratrix's application for permission to appeal to address whether the administratrix's claims were "based upon ordinary common law negligence, medical malpractice, or both." Id. at 554.

We explained that, "[b]ecause medical malpractice is a category of negligence, the distinction between medical malpractice and negligence claims is subtle; there is no rigid analytical line separating the two causes of action." Id. at 555 (citations omitted). Thus, the Court resolved that "whether claims should be characterized as ordinary negligence or medical malpractice claims obviously depends heavily on the facts of each individual case." Id. at 556. However, the Court provided the following guidance in distinguishing between ordinary negligence and medical malpractice:

> [W]hen a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable. Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.
>
> . . . .

Medical malpractice cases typically involve a medical diagnosis, treatment or other scientific matters. The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of fact.

Id. at 555-56 (alteration in original) (citations omitted); see also Draper v. Westerfield, 181 S.W.3d 283, 290 (Tenn. 2005) ("[I]n determining whether an action is for medical malpractice or for common law negligence, the issue is whether the alleged negligent conduct 'bears a substantial relationship to the rendition of medical treatment by a medical professional.'" (citing Gunter v. Lab. Corp. of Am., 121 S.W.3d 636, 641 (Tenn. 2003))). The Court ultimately concluded that it is "the responsibility of the courts to ascertain the nature and substance of a claim" and that the "designation given those claims by either the plaintiff or the defendant is not determinative." Estate of French, 333 S.W.3d at 557.

However, roughly four months after this Court's decision in Estate of French, at its next session, the Legislature passed the Tennessee Civil Justice Act of 2011, further amending the Tennessee Medical Malpractice Act. See Tennessee Civil Justice Act of 2011, ch. 510, 2011 Tenn. Pub Acts 1505 (codified at Tenn. Code Ann. § 29-26-101 et seq. (Supp. 2011)). Notably, the Tennessee Civil Justice Act of 2011 amended the existing Tennessee Medical Malpractice Act by removing all references to "medical malpractice" from the Tennessee Code and replacing them with "health care liability" or "health care liability action" as applicable. See id. Furthermore, section 29-26-101 was added to the Code which defined "health care liability action" as "any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, *regardless of the theory of liability on which the action is based.*" Tenn. Code Ann. 29-26-101(a)(1) (Supp. 2011) (emphasis added). This same section went on to provide that "[a]ny such civil action or claim is subject to the provisions of this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint." Id. § 29-26-101(c).

With the foregoing history in mind we turn to the issues raised in this appeal.

## B. *Effect of THCLA on <u>Estate of French</u> Analysis*

It is undisputed that Parents failed to comply with the pre-suit notice and certificate of good faith provisions of Tennessee Code Annotated sections 29-26-121 and 122. See Weismark, 2014 WL 5511773, at *4. Moreover, after a thorough review of the trial court's ruling on Ms. Weismark's motion to dismiss, we agree with the Court of Appeals that "[n]othing in the trial court's written order or oral ruling indicates that the trial court considered the standard outlined in <u>Estate of French</u> in dismissing the complaint." Id. at *9. The trial judge relied solely on the plain language of Tennessee Code Annotated sections 29-26-101, -121, and -122 to determine that all causes of action alleged in the complaint were covered by the THCLA. Specifically, the trial court stated that the THCLA is "very broad" and encompasses Parents' claims because they relate to the provision of "health care services" by a "health care provider" as those terms are defined by statute. Thus, the resolution of this appeal depends on whether our decision in <u>Estate of French</u> has been statutorily abrogated by the Tennessee Civil Justice Act of 2011.

When determining the meaning of statutes, our primary goal "is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." <u>Johnson v. Hopkins</u>, 432 S.W.3d 840, 848 (Tenn. 2013) (quoting <u>Lind v. Beaman Dodge, Inc.</u>, 356 S.W.3d 889, 895 (Tenn. 2011)). We presume that every word in a statute has meaning and purpose and that each word's meaning should be given full effect as long as doing so does not frustrate the General Assembly's obvious intention. Id. Words "'must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" Id. (quoting <u>Mills v. Fulmarque, Inc.</u>, 360 S.W.3d 362, 368 (Tenn. 2012)). When a statute's meaning is clear, we "'apply the plain meaning without complicating the task' and enforce the statute as written." Id. (quoting <u>Lind</u>, 356 S.W.3d at 895). Finally, we presume that the Legislature knows the law and makes new laws accordingly. <u>Lee Med., Inc. v. Beecher</u>, 312 S.W.3d 515, 527 (Tenn. 2010).

Tennessee Code Annotated section 29-26-101(a)(1) defines health care liability action as "any civil action. . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Furthermore subsection 101(a)(2) defines a health care provider as "[a] health care practitioner licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68. . . ." Finally, subsection 101(c) makes "[a]ny such civil action or claim [] subject to this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint."

Giving every word in this section its full effect and plain meaning, we hold that section 29-26-101 establishes a clear legislative intent that *all* civil actions alleging that a covered health care provider or providers have caused an injury related to the provision

of, or failure to provide health care services be subject to the pre-suit notice and certificate of good faith requirements, regardless of any other claims, causes of action, or theories of liability alleged in the complaint. Furthermore, we are mindful of the fact that the Tennessee Civil Justice Act of 2011 was enacted mere months after this Court's decision in Estate of French. Under the canons of statutory construction, we presume that the Legislature was aware of this Court's decision in Estate of French and acted accordingly in passing an act that rendered it effectively moot. We need not engage in further statutory interpretation in the face of this clear legislative edict. Thus, we hold that the "nuanced" approach for distinguishing ordinary negligence and health care liability claims as outlined in Estate of French has been statutorily abrogated.

Applying the clear language of the THCLA to Parents' complaint, we conclude that the allegations contained therein meet the definition of a health care liability action as defined in section 29-26-101(a)(1). Parents' complaint alleges that Ms. Weismark "is a licensed clinical social worker." Social workers are a group licensed and regulated under title 63 of the Tennessee Code. See Tenn. Code Ann. § 63-23-105 (2010 & Supp. 2014). Thus, Ms. Weismark meets the definition of a "health care provider" under section 29-26-101(a)(2). Parents recognized Ms. Weismark's status as a health care provider when they relied upon the Juvenile Court's order as affording them a right to seek access Ms. Weismark's treatment records of M.L. Specifically, Parents alleged at Paragraph 8 that the Juvenile Court's order provided them with "the right to receive copies of the child's medical, health or other treatment records directly from the physician or *health care provider* who provid[ed] such treatment. . . ."

Additionally, Parents' complaint is rife with allegations relating to Ms. Weismark's provision of health care services to M.L. Paragraph 9 of the complaint alleges that Ms. Weismark "did an intake for counseling for [M.L.]". Paragraphs 17 and 18 allege that Ms. Weismark did not have consent to counsel M.L. Paragraph 25 alleges that M.L. "has been harmed emotionally in not being allowed to counsel with her [p]arents" and that Parents "will seek an independent mental health examination of the child to assess the harm caused by failing to counsel with them towards reunification." Paragraph 26 of the complaint alleges that "the secreted counseling with [M.L.] is the direct and proximate harm and injury to [parents] and [M.L.]." Paragraph 29 alleges that Ms. Weismark "should be keenly aware that providing this secret counseling for the child is a gross deviation from the standard of care." Finally, Paragraph 31 alleges that "[Parents] would show that [Ms.] Weismark *is **negligent** in providing health services* without following the parameters of the court order by notifying [parents] and allowing them to participate in said counsel." (Bold in original) (second emphasis added). Thus, because Parents' complaint alleges negligence in the provision of health care services by a covered health care provider, it is subject to the THCLA "regardless of any other claims, causes of action, or other theories of liability alleged in the complaint." Tenn. Code Ann. § 29-26-101(c). Because Parents failed to comply with the pre-suit notice and

certificate of good faith requirements of the THCLA, dismissal of their complaint is appropriate.

## C. Remedy

We next consider Parents' assertion that, even if the THCLA is applicable to their complaint, dismissal with prejudice is not mandatory. Parents rely upon the language of sections 29-26-121 and -122 as support for this argument. Section 29-26-122 requires a certificate of good faith only in health care liability actions "in which expert testimony is required by [section 29-26-115]." Furthermore, under 29-26-122(c), "[t]he failure of a plaintiff to file a certificate of good faith in compliance with this section shall, upon motion, make the action subject to dismissal *with prejudice*." (Emphasis added.).

However, section 29-26-121 includes no similar provision requiring dismissal with prejudice for failure to provide pre-suit notice. This Court has interpreted the disparity between sections 29-26-121 and -122 as indicative of the Legislature's intent that failure to provide pre-suit notice result only in dismissal *without prejudice*:

> [Section] 29-26-121 does not provide for a penalty or consequence for failing to provide pre-suit notice . . . . Whereas [section] 29-26-122 expressly require[s] a dismissal with prejudice for a plaintiff's failure to file a certificate of good faith. These code sections, [] 29-6-121 and -122, were enacted together as part of the Tennessee Health Care Liability Act; therefore, we interpret these sections together and must presume that the Legislature intended for them to carry different sanctions for noncompliance. The Legislature could have, but did not, provide for dismissal with prejudice for noncompliance with [section] 29-26-121(a)(1). Therefore, we hold that dismissal without prejudice is the proper sanction for noncompliance with [Tennessee Code Annotated section] 29-26-121(a)(1).

Foster v. Chiles, No. E2012-01780-SC-R11-CV, 2015 WL 343872, at *4 (Tenn. Jan. 27, 2015) (internal citations omitted).

## 1. Dismissal without Prejudice

Parents argue that because the acts alleged in their complaint do not require expert testimony by a medical professional, dismissal with prejudice under section 29-26-122(c) is not required. At most, Parents say, the dismissal should be without prejudice under section 29-26-121, based on their failure to file pre-suit notice. If the only failing was lack of pre-suit notice then dismissal without prejudice would be the proper remedy. See Foster, 2015 WL 343872, at *4. But that is not the only failing.

## 2. Dismissal with Prejudice

As stated earlier and reiterated below, Parents have alleged health care liability claims based on allegations that Ms. Weismark deviated from the standard of care. In health care liability actions, such as this one, expert proof is required to establish the recognized standard of acceptable professional practice in the profession, unless the claim falls within the "common knowledge" exception that is not applicable here. See Tenn. Code Ann. § 29-26-115 (2012); Shipley v. Williams, 350 S.W.3d 527, 537 & n.5 (Tenn. 2011) (discussing the statutory expert proof requirements and citing Seavers v. Methodist Med. Ctr. of Oak Ridge, 9 S.W.3d 86, 92 (Tenn.1999), which discussed the "common knowledge" exception). Parents' attempt to couch their health care liability claims in the guise of a violation of a court order is not convincing.[7] Parents' complaint contains numerous allegations that Ms. Weismark deviated from the standard of care and was negligent in providing counseling services to M.L. Most telling are paragraphs 25, 26, 27, 29, and 31, which allege that: (1) M.L. has been harmed emotionally because she was not allowed to counsel with Parents; (2) Parents will seek an independent mental health examination of M.L. to assess the harm caused by Ms. Weismark's failure to counsel with Parents towards reunification; (3) Ms. Weismark's "secreted counseling" with M.L. has directly and proximately caused Parents "severe emotional harm"; (4) M.L. has suffered "severe emotional harm from being forcefully kept separated from her parents"; and (5) Ms. Weismark's "secret counseling" was a "gross deviation from the standard of care." Expert testimony clearly would be required to prove these allegations. Consequently, Parents were required to provide a certificate of good faith under Tennessee Code Annotated section 29-26-122, and their failure to comply with this statutory requirement warrants dismissal *with* prejudice. See Tenn. Code Ann. § 29-26-122(c).

### D. Constitutional Challenge

Parents have also raised a constitutional challenge to the THCLA for the first time in this Court. Parents assert that if this Court interprets the THCLA as abrogating Estate of French, "[t]he Forfeiture provisions of Title 29, Section 26 are unconstitutional in that they restrict the [Parents'] property right in their cause of action, it [sic] violates the equal protection clause, and unconstitutionally restricts the right of free access to the courts."

"It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court." Powell v. Cmty. Health Sys., Inc., 312 S.W.3d 496, 511 (Tenn. 2010) (citing Barnes v. Barnes, 193 S.W.3d 495, 501 (Tenn. 2006)). This principle applies equally to constitutional challenges. See In re M.L.P., 281 S.W.3d 387,

---

[7] We note that when Parents' counsel was asked at oral argument before this Court why Parents did not file a motion for contempt with the Juvenile Court, she responded that the "Juvenile Court cannot cure those damages." By this statement, counsel acknowledged that this case involves more than violation of a court order.

394 (Tenn. 2009) ("Because Father did not properly raise [his constitutional challenge] in the trial court, he has waived his right to argue this issue for the first time on appeal."). Thus, Parents waived their constitutional challenge, and we will not address it in this appeal.[8]

## IV. Conclusion

For the reasons stated herein, we hold that Estate of French has been abrogated by statute. We further hold that Parents' complaint is subject to the THCLA, which required them to file pre-suit notice and a certificate of good faith. Accordingly, due to Parents' undisputed failure to meet either requirement, the judgment of the Court of Appeals is reversed, and the judgment of the trial court dismissing Parents' complaint with prejudice is reinstated. Costs of this appeal are taxed to Adam and Ashley Ellithorpe, for which execution, if necessary, may issue.

_____
CORNELIA A. CLARK, JUSTICE

---

[8] On April 24, 2015, the Attorney General filed a motion to strike Parents' constitutional challenge, or, in the alternative, a motion for permission to intervene. This Court entered an order on April 27, 2015, granting the Attorney General permission to file a brief as an intervening party and taking the Attorney General's motion to strike under advisement. Ellithorpe v. Weismark, No. M2014-00279-SC-R11-CV (Tenn. Apr. 27, 2015) (order granting Attorney General permission to intervene and taking motion to strike under advisement). Because Parents have waived their constitutional challenge, the Attorney General's motion to strike is dismissed as moot.