IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 5, 2017 Session

## MELISSA GALE JOHNSON ET AL. v. RUTHERFORD COUNTY, TENNESSEE ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 70031      M. Keith Siskin, Judge**

_____

### No. M2017-00618-COA-R3-CV

_____

The plaintiffs, as co-conservators for their adult son, filed this action against the county, seeking payment of medical expenses incurred by their son following an assault upon him by another inmate while he was incarcerated at the county jail facility. The plaintiffs later amended their complaint to add allegations of civil rights violations, general negligence, and health care liability. The county filed a third-party complaint against the medical provider with whom the county had contracted to provide medical services for the inmates at the jail. The third-party complaint was based upon an indemnity clause contained within the respective parties' contract. The medical provider filed a motion to dismiss the county's third-party complaint because the county had not complied with the requirements of the Tennessee Health Care Liability Act ("THCLA"). Following a hearing, the trial court dismissed the county's third-party complaint by reason of the county's failure to comply with the requirements of the THCLA. The county timely appealed. Having determined that the trial court erred by treating the county's third-party complaint as a THCLA claim, we reverse the court's dismissal of the county's third-party complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Blake Garner and Nicholas Christiansen, Murfreesboro, Tennessee, for the appellant, Rutherford County, Tennessee.

Edward A. Hadley, Renee Levay Steward, and Brent A. Kinney, Nashville, Tennessee, for the appellee, Rudd Medical Services, PLC.

## OPINION

### I. Factual and Procedural Background

The plaintiffs' adult son, Robert L. Johnson, was arrested and booked into the Rutherford County Adult Detention Center ("RCADC") on October 20, 2014. Mr. Johnson remained in the custody of RCADC on December 20, 2014, when Mr. Johnson was assaulted by another inmate, Guy Mitchell, with whom Mr. Johnson shared a cell. As a result of this attack, Mr. Johnson suffered life-threatening injuries, including a severe brain injury, and was transported to the hospital, where he remained in the intensive care unit for several weeks. Mr. Johnson was allegedly rendered permanently disabled as a result of his injuries.

The co-plaintiffs, Melissa Gale Johnson and Ernest Wade Johnson, acting as co-conservators for Robert L. Johnson ("Plaintiffs"), filed a complaint on July 24, 2015, seeking payment of Mr. Johnson's medical expenses in the amount of $293,413. Plaintiffs sought payment of these expenses from Rutherford County ("the County"), pursuant to Tennessee Code Annotated § 41-4-115 (2014), which provides in pertinent part: "The county legislative bodies alone have the power, and it is their duty, to provide medical attendance for all prisoners confined in the jail in their respective counties." On August 26, 2015, Plaintiffs filed a "First Amended Complaint," wherein they reduced the damages sought for Mr. Johnson's medical bills to $230,303.

The County filed an answer to the amended complaint on October 7, 2015, admitting that it had not paid for all of Mr. Johnson's medical expenses but denying that it was liable for same. The County asserted, *inter alia*, that it was immune from suit pursuant to the Governmental Tort Liability Act.

On November 24, 2015, Plaintiffs filed a motion seeking to amend their complaint in order to add claims of civil rights violations and negligence. Plaintiffs also sought to add Rutherford County Sheriff Robert Arnold and Ken Tucker as named defendants. The trial court entered an order allowing the amendment of Plaintiffs' complaint on December 11, 2015. The court noted in this order that Plaintiffs had revised the proposed amended complaint.

Plaintiffs subsequently filed a "Revised Second Amended Complaint" on December 11, 2015, wherein Plaintiffs added a negligence claim against the County for housing Mr. Johnson with Mr. Mitchell, who allegedly suffered from mental illness and

had a known propensity for violent attacks against other inmates.[1]  Plaintiffs asserted, *inter alia*, that in October 2014, Mr. Mitchell's relatives had contacted Ken Tucker, who was director of health care services at RCADC, and informed him that Mr. Mitchell suffered from mental illness and that Mr. Mitchell was a danger to himself or others. According to the complaint, Mr. Mitchell's relatives also informed Mr. Tucker that Mr. Mitchell had assaulted other inmates in the past.  Plaintiffs further alleged that Mr. Mitchell threatened Mr. Johnson on the day of the assault and that deputies were notified of this threat but did not timely respond to it.  Plaintiffs sought damages in the amount of $300,000 pursuant to the Governmental Tort Liability Act.

On January 15, 2016, the County filed an answer and third-party complaint, asserting a claim against Rudd Medical Services, PLC, a/k/a Rudd Medical Management Services, LLC ("Rudd"), Mr. Tucker's employer and the entity that provided medical services to the prisoners housed at RCADC.  The County alleged that it had entered into a contract with Rudd for the provision of health care services to inmates, which contract contained a clause requiring Rudd to indemnify and hold the County harmless from any claims based upon, *inter alia*, the actions of Rudd employees.

On April 8, 2016, Plaintiffs filed another motion to amend their complaint, seeking to assert negligence claims pursuant to the THCLA against Rudd and Mr. Tucker.  Plaintiffs stated that they had complied with the pre-suit notice requirements of Tennessee Code Annotated §§ 29-26-121 and -122.  Plaintiffs attached to their motion a "Third Amended Complaint," which asserted a health care liability claim, and also attached a copy of the pre-suit notice documents, "HIPPA-Compliant Release," and Certificate of Good Faith provided to the defendants.  Plaintiffs later struck their April 8, 2016 motion to amend and concomitantly filed an additional motion to amend along with a revised "Third Amended Complaint."  This complaint contained additional allegations of negligence against the County based on the County's purported knowledge of Mr. Mitchell's previous violent behavior.  On May 24, 2016, the trial court entered an order allowing Plaintiffs to amend their complaint.  The Third Amended Complaint was filed on May 16, 2016.

On December 19, 2016, Rudd filed a motion to dismiss the County's third-party complaint against Rudd or, in the alternative, a motion for summary judgment.  Rudd asserted that the County had failed to file a certificate of good faith with its third-party complaint, as required by Tennessee Code Annotated § 29-26-122.  Rudd further averred that it had attached affidavits executed by Mr. Tucker and John Rudd, M.D., which "clearly and completely negate[d] essential elements of [the County's] claim against [Rudd]."

---

[1] No additional parties were added as defendants in this revised complaint.

Mr. Tucker stated in his attached affidavit that he was a registered nurse and director of health services for Rudd, such that he was responsible for the "supervision and oversight of medical care of inmates" at RCADC. Mr. Tucker opined that he had complied with the applicable standard of care at all times. Mr. Tucker also stated that Mr. Mitchell was under the treatment of Dr. Rudd and was routinely receiving medication for his mental health needs prior to the incident at issue. According to Mr. Tucker, he had no control over where or how an inmate was housed.

Dr. Rudd stated in his affidavit that he was a physician who provided medical services to inmates at RCADC, including Mr. Mitchell, and that he also supervised the medical staff there. Dr. Rudd opined that he had complied with the applicable standard of care concerning his treatment of Mr. Mitchell. Dr. Rudd explained that Mr. Mitchell was under his medical care and supervision at the time of the incident in question. Dr. Rudd further stated that Mr. Mitchell did not meet the criteria for transfer to a secure psychiatric facility.

The County filed a response in opposition to Rudd's motion to dismiss, arguing that its claim against Rudd was not a healthcare liability action. The County cited the indemnity clause contained within its contract with Rudd, which states:

> [Rudd] shall indemnify and hold the Sheriff, the County and each of their elected officials, officers, employees and agents (hereinafter collectively referred to as the "indemnified persons") whole and harmless from and against all costs, liabilities and claims for damages of any kind (including judgments, interest, attorney's fees and costs of investigation and defense) arising out of the performance of [Rudd], its agents or servants under this Proposal and resulting contract and/or negligent, wanton, intentional or deliberate acts or omissions of [Rudd] or any of its agents, servants or employees.

The County further asserted that because its claim involved contractual indemnification for ordinary negligence, rather than medical malpractice, it was not required to comply with Tennessee Code Annotated § 29-26-122.

On February 27, 2017, the trial court entered an order granting Rudd's motion to dismiss. The court stated that the THCLA defined a health care liability action as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." *See* Tenn. Code Ann. § 29-26-101(a)(1). The trial court relied upon our Supreme Court's opinion in *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015), echoing the High Court's statement that the THCLA established

4

a clear legislative intent that *all* civil actions alleging that a covered health care provider or providers have caused an injury related to the provision of, or failure to provide health care services be subject to the pre-suit notice and certificate of good faith requirements, regardless of any other claims, causes of action, or theories of liability alleged in the complaint.

(Emphasis in original.) The trial court in this action further explained in pertinent part:

[T]he County is alleging that Rudd obtained information during the course of its treatment of an inmate at the Jail (Guy Mitchell, Jr.) regarding the status of Mitchell's mental health, compliance with his medications, and his propensity to be dangerous to other inmates. The County asserts that, after obtaining the pertinent mental health information about Mitchell, Rudd failed to warn the County that Mitchell posed a danger to other inmates. Mitchell then attacked another inmate in his pod (Robert Lee Johnson, a Plaintiff herein), causing the injuries at issue in this lawsuit. Clearly, these allegations by the County fit the broad definition of a "health care liability action" as set forth in the THCLA. This civil action alleges that a health care provider (Rudd) has caused an injury (to Johnson) related to the provision of health care services to a person (Mitchell), regardless of the theory of liability (indemnity) alleged in the Third Party Complaint. The County's argument that the couching of its claim against Rudd as a contractual indemnity claim removes it from the purview of the THCLA is unpersuasive. As the Supreme Court of Tennessee emphasized in *Ellithorpe*, *all* qualifying legal actions are now encompassed by the THCLA, regardless of any other theories of liability in the complaint. *See Id*.

Since the County failed to provide the necessary certificate of good faith along with its Third Party Complaint, the Third Party Complaint must be dismissed with prejudice. *See Id*. at 828. In light of this determination, Rudd's alternative Motion for Summary Judgment need not be addressed.

The County timely appealed this ruling.

## II. Issues Presented

The County has presented two issues for our review, which we have restated slightly:

5

1.      Whether the trial court erred by determining that a contractual indemnity claim filed by a non-patient against a medical provider required compliance with the THCLA.

2.      Whether the trial court erred by determining that a failure to warn claim filed by a non-patient against a medical provider was governed by the THCLA.

Rudd raises the following additional issues, which we have also restated slightly:

3.      Whether the County's arguments raised for the first time on appeal have been waived.

4.      If this Court determines that dismissal was inappropriate, whether Rudd is entitled to summary judgment as a matter of law.

### III.  Standard of Review

Our Supreme Court has elucidated the following regarding the standard of review applicable to a motion to dismiss a health care liability action based upon a plaintiff's noncompliance with Tennessee Code Annotated §§ 29-26-121 and -122:

> The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss.  In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof.  Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so.  Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes.  If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance.  If the defendant prevails and the complaint is dismissed, the plaintiff is entitled to an appeal of right under Tennessee Rule of Appellate Procedure 3 using the standards of review in Tennessee Rule of Appellate Procedure 13.  If the plaintiff prevails, the defendant may pursue an interlocutory appeal under

either Tennessee Rule of Appellate Procedure 9 or 10 using the same standards.

Because the trial court's denial of the Defendants' motion involves a question of law, our review is de novo with no presumption of correctness. *Graham v. Caples,* 325 S.W.3d 578, 581 (Tenn. 2010). The question of whether [the plaintiff] has demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings. *Starr v. Hill,* 353 S.W.3d 478, 481-82 (Tenn. 2011). We review the trial court's decision to excuse compliance under an abuse of discretion standard. "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *Wilson v. State,* 367 S.W.3d 229, 235 (Tenn. 2012) (citing *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011)). We examine the legal sufficiency of the complaint and do not consider the strength of the plaintiff's evidence; thus, all factual allegations in the complaint are accepted as true and construed in flavor of the plaintiff. *Lind v. Beaman Dodge, Inc.,* 356 S.W.3d 889, 894 (Tenn. 2011).

* * *

The leading rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. *Walker v. Sunrise Pontiac-GMC Truck, Inc.,* 249 S.W.3d 301, 309 (Tenn. 2008). To that end, we start with an examination of the statute's language, *Curtis v. G.E. Capital Modular Space,* 155 S.W.3d 877, 881 (Tenn. 2005), presuming that the legislature intended that each word be given full effect. *Lanier v. Rains,* 229 S.W.3d 656, 661 (Tenn. 2007). When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming,* 19 S.W.3d 195, 197 (Tenn. 2000); *see also In re Adoption of A.M.H.,* 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.") (citing *Calaway ex rel. Calaway v. Schucker,* 193 S.W.3d 509, 516 (Tenn. 2005)). The construction of a

statute is also a question of law which we review de novo without any presumption of correctness. *Lind*, 356 S.W.3d at 895.

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307-08 (Tenn. 2012).

## IV. Waiver

As a threshold matter, Rudd argues that the County has waived certain arguments by failing to raise them at the trial court level. According to Rudd, the County raised the following arguments for the first time on appeal: 1) that the THCLA does not apply to third-party complaints, 2) that it is a practical impossibility for the County to comply with the THCLA in this case, and 3) that the third-party complaint asserts a claim for contractual indemnification rather than the provision of health care services. Although it is true that this Court does not entertain <u>issues</u> raised for the first time on appeal, *see Dye v. Witco Corp.*, 216 S.W.3d 317, 321 (Tenn. 2007), the general issue of whether the County's third-party claim against Rudd was subject to the THCLA was fully litigated in the trial court. When opposing the motion to dismiss, the County consistently maintained that it was asserting a claim for contractual indemnity and not a health care liability claim. The County's arguments regarding application of the THCLA to third-party claims and the impossibility of compliance are not novel issues on appeal because they relate to the overarching issue of whether the THCLA is applicable to the County's third-party claim against Rudd. We therefore determine Rudd's waiver argument to be unavailing.

## V. Applicability of the THCLA

The County's issues on appeal concern whether the trial court properly determined that the THCLA would be applicable to its third-party claim against Rudd. The County maintains that its claim is simply one for contractual indemnity rather than health care liability. The County further argues that federal court precedent establishes that the THCLA does not apply to third-party complaints. Regarding compliance with the THCLA's requirements, the County asserts that it could not comply because it was not a plaintiff or person within the meaning of the THCLA and because no care or treatment was provided to the County. Finally, the County contends that a "failure to warn" claim is different from a typical THCLA claim.

The THCLA incorporates certain requirements for the filing of a health care liability claim. For example, Tennessee Code Annotated § 29-26-121(a)(1) (Supp. 2017) provides:

8

Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

Likewise, Tennessee Code Annotated § 29-26-122(a) (2012) provides in pertinent part:

In any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. If the certificate is not filed with the complaint, the complaint shall be dismissed . . . .

With regard to the general provisions of the THCLA, Tennessee Code Annotated § 29-26-101(a)(1) (Supp. 2017) supplies the following definition of a "health care liability action":

"Health care liability action" means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based . . . .

Tennessee Code Annotated § 29-26-101(c) (Supp. 2017) further declares in pertinent part: "Any such civil action or claim is subject to this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint . . . ."

The County argues that its third-party complaint does not allege an injury related to the provision of health care services by a Rudd employee. Rather, the County maintains that its claim is based on the above-quoted clause contained within the respective parties' contract, which states that Rudd would indemnify the County from:

costs, liabilities and claims for damages of any kind (including judgments, interest, attorney's fees and costs of investigation and defense) arising out of the performance of [Rudd], its agents or servants under this Proposal and resulting contract and/or negligent, wanton, intentional or deliberate acts or omissions of [Rudd] or any of its agents, servants or employees.

In addition, the County contends that the provisions of Tennessee Code Annotated §§ 29-26-121 and -122 were not intended to apply to unrelated third-party claims. *See Clem v. Delta Pharma, Inc.*, No. 2:14-CV-01220-JPM, 2015 WL 1401575, at *2 (W.D.

9

Tenn. Mar. 26, 2015). In the *Clem* case, the plaintiff filed a claim against the manufacturer of an injectable drug that allegedly caused damage to the plaintiff. *Id.* at *1. The manufacturer in turn filed a third-party complaint against the medical provider who had administered the injection. *Id.* The medical provider asserted that the third-party complaint should be dismissed because the manufacturer had failed to file a certificate of good faith. *Id.* at *2. In response to this argument, the District Court stated:

> Because Tennessee law does not require a certificate of good faith when a party files a third-party complaint, the Court finds that Care Rite's argument fails. The plain language of Tenn. Code Ann. § 29-26-122 does not apply to third-party claims. Every reference to when a certificate of good faith is required—or to when an action must be dismissed—simply uses the word "complaint" without mentioning any other form of pleading. Tenn. Code Ann. § 29-26-122. The Tennessee legislature is capable of referencing other forms of pleadings, including counter claims, cross-claims, and third-party complaints when it wishes to do so. *See, e.g.*, § 28-1-114(a) ("A counterclaim or third party complaint or cross-claim is not barred by the applicable statute of limitations or any statutory limitation of time, however characterized, if it was not barred at the time the claims asserted in the complaint were interposed."); § 47-2A-506 ("A counterclaim or third-party complaint is not barred by the statute of limitations provided by this section if it was not barred at the time the claims asserted in the complaint were interposed."); § 66-11-126 ("[T]he owner or owners shall have the right to make the prime contractor or remote contractor a defendant by third-party complaint or cross-claim as is otherwise provided by law.")
>
> It would be improper to read in a dispositive requirement to a third-party complaint that is not required by the plain language of the statute. As Care Rite acknowledged during the Telephonic Scheduling Conference, no Tennessee court has ever applied § 29-26-122 to a third-party complaint.

*Id.* at *2. We note, of course, that this federal precedent is merely persuasive authority. *See Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 871 (Tenn. 2010).

Rudd argues that the third-party complaint meets the statutory definition of a health care liability action and that the County could have complied with the THCLA's requirements had it chosen to do so. Relying on our Supreme Court's opinion in *Ellithorpe*, 479 S.W.3d at 827, Rudd contends that if the allegations of the complaint meet the definition of a health care liability action, then the requirements of the THCLA must be met. According to Rudd, because the County asserted that "the negligence of

Rudd's agents/employees may have contributed to the injuries suffered in this case based on Rudd's agents/employees failure to warn or provide information about the risks and dangers posed by Guy Mitchell," the claim asserts that a health care provider caused an injury to the plaintiffs related to the provision of health care services to Mr. Mitchell.

In support of its argument that its claim based in contractual indemnity is not subject to the THCLA, the County has directed us to a factually similar case from a federal district court in West Virginia. In *Treadway v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 5:12-CV-00049, 2013 WL 690431, at *8 (S.D.W. Va. Feb. 25, 2013), the plaintiffs filed suit against a jail facility authority regarding the death of an inmate, allegedly as the result of the denial of adequate medical care by the jail authority. The plaintiffs also initiated a claim against the medical provider who had been contracted to provide medical services for the jail. *Id*. at *1. The jail authority subsequently filed its own third-party complaint against the contracted medical provider, seeking indemnification pursuant to their contract for the provision of medical services. *Id*. at *2.

The medical provider in *Treadway* presented a motion to dismiss the third-party complaint filed against it by the jail authority, asserting that the jail authority had failed to comply with the requirements of West Virginia's Medical Professional Liability Act ("MPLA") before filing its claim. *Id*. West Virginia's Act, similar to the THCLA, requires that pre-suit notice be given and that a "screening certificate of merit" be executed by an expert. *Id*. at *4. The jail authority had not complied with these requirements prior to filing its third-party complaint, arguing that its claim was one for contractual indemnity rather than health care liability. *Id*. at *7.

In analyzing this issue, the *Treadway* court explained:

> The West Virginia Supreme Court of Appeals has concluded that "the determination of whether a cause of action falls within the MPLA is based upon the factual circumstances giving rise to the cause of action, not the type of claim asserted." *Blankenship v. Ethicon, Inc.,* 656 S.E.2d 451, 454 (W. Va. 2007). The court further explained that it is the "particular facts of a case [that] will impact the applicability of the [MPLA]. For instance, where the allegedly offensive action was committed within the context of rendering of ['health care,'] the statute applies. Where, however, the action in question was outside the realm of the provision of ['health care,'] the statute does not apply." *Blankenship,* 656 S.E.2d at 457-58 (citing *Gray* [*v. Mena,*] 625 S.E.2d [326,] 332 [(W. Va. 2005)]). Consequently, it is not material that a plaintiff does not plead a claim as being governed by the MPLA. Instead, the West Virginia Supreme Court of Appeals has instructed that if the alleged act or omissions are committed

by a health care provider within the context of the rendering of "health care" as defined by the W. Va. Code § 55-713-2(e), the MPLA will apply regardless of how the claim is pled. (*Blankenship,* 656 S.E.2d at 458.) The MPLA defines "health care" as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider, for, to or on behalf of a patient during the patient's medical care, treatment or confinement." W. Va. Code § 55-713-2(e).[FN]

In the case *sub judice,* a fair reading of [the jail authority's] claim reveals that it is one for indemnification and contribution which is a claim of relief grounded upon the purported contract entered into between [the jail authority] and [the medical provider]. A provision of that contract purportedly allows for the indemnification of [the jail authority] upon the arising of certain claims, losses or failures of [the medical provider]. A cursory reading of the pleading indicates that the [the jail authority] is merely seeking to avail itself of the contractual, statutory or common law rights to enforce the contracted-for benefit. [The jail authority's] claim against [the medical provider] is not based on [the medical provider's] rendering health care to [the jail authority], but rather [the medical provider's] liability to [the jail authority] relative to [the medical provider's] rendering health care to another. The issue as between [the medical provider] and [the jail authority] is one of a contractual obligation.

Moreover, [the medical provider] has not cited to any authority for the proposition that an indemnification claim may be included within the definition of "medical professional liability" actions. This Court finds such a claim suspect, especially, whereas in this case the Defendant/Third–Party is seeking the benefit of a matter wholly separate from the aggrieved injury or the health care services of which the Plaintiff complains. West Virginia courts have considered examples of the types of conduct that would be outside the scope of the MPLA. (*See R.K. v. St. Mary's Med. Ctr., Inc.,* 735 S.E.2d 715, 726 (W. Va. 2012) ("improper disclosure of medical records[ ] does not fall within the MPLA's definition of 'health care,' and, therefore, the MPLA does not apply."); *Boggs v. Camden-Clark Mem. Hosp. Corp.,* 609 S.E.2d 917, 924 (W. Va. 2004) (finding that MPLA did not apply to claims for fraud, negligent hiring and retention, destruction of records, outrage, and spoliation of evidence). Further, the West Virginia Supreme Court has stated that the MPLA is not applicable to claims "that may be contemporaneous to or related to the alleged act of medical professional liability." *Boggs,* 609 S.E.2d at 924. Just as the *Boggs* court explained, "application of the MPLA to non-medical malpractice claims

would be a logistical impossibility. No reputable physician would sign a certificate of merit for a claim of fraud or larceny or battery; how could such a certificate of merit be helpful or meaningful?" (*Id.* at 924.) The same could be said about an indemnification and/or contribution claim. The facts of this case clearly reveal that [the medical provider] and [the jail authority] are purported parties to a contract—it is a provision of that contract that is at issue in the Third-Party Complaint. These facts do not invoke the applicability of the MPLA statute since they are outside the realm of the provision of medical services, but rather the result of a contract entered into by the parties. [The medical provider] seeks an expansive reading of the MPLA, a reading that is constrained by the purpose of the MPLA. In this case, an indemnification claim does not require application of the MPLA any more than the *Boggs'* claims of fraud, negligent hiring or spoliation of evidence. [The jail authority's] claim is not a medical malpractice action and [the jail authority] was not required to adhere to the MPLA's pre-filing requirements. Consequently, [the medical provider's] motion to dismiss should be denied.

[FN] In context, this term is used in the definition for "medical professional liability" which is defined as "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-713-2(i).

*Treadway*, 2013 WL 690431, at *7-8. The *Treadway* court accordingly denied the medical provider's motion to dismiss the third-party complaint. *Id*.

Although we have located no Tennessee state precedent that is on point with the factual situation in the case at bar, we find the *Treadway* court's analysis to be well reasoned and persuasive. In the case at bar, the County has not sued Rudd based on Rudd's provision of health care services to the County, but rather based upon an indemnification provision contained within the parties' contract. Moreover, requiring the County to comply with the requisites of the THCLA in this matter would strain logic. As this Court has explained:

One of the purposes of the certificate of good faith is to weed out frivolous lawsuits before any party incurs substantial litigation expenses. *Jenkins v. Marvel,* 683 F. Supp. 2d [626,] 639 [(E. D. Tenn. 2010)]. The filing of a certificate of good faith indicating that an expert has reviewed the claims and has certified that they are taken in good faith "satisfies the

13

goal of attempting to ensure that suits proceeding through litigation have some merit." *Id.*

*Hinkle v. Kindred Hosp.*, No. M2010-02499-COA-R3-CV, 2012 WL 3799215, at *8 (Tenn. Ct. App. Aug. 31, 2012), *perm. app. denied* (Tenn. Dec. 10, 2013). In this action, in order to comply with the requisites of the THCLA, the County would be required to retain an expert to opine that the claims asserted by another party, against which the County is also attempting to defend, have merit.

Despite the broad definition of a health care liability action found in the THCLA, proper interpretation dictates that the County's claim be treated as precisely what it is—a contractual indemnity claim. As the court explained in *Treadway*, the "[jail authority's] claim is not a medical malpractice action and [the jail authority] was not required to adhere to the [malpractice statute's] pre-filing requirements." *See id*. at *8. We conclude that the trial court erred by dismissing the County's contractual indemnity claim against Rudd based upon the County's failure to comply with the THCLA.

Rudd strenuously argues that the THCLA is applicable to the County's claim for indemnification because the underlying claim for which the County seeks indemnification is based in part on the THCLA. We find this argument unavailing. Such a result would be akin to requiring a physician who sues his or her malpractice insurance carrier for contractual indemnification against a loss based upon the physician's malpractice to comply with the requirements of the THCLA. We determine that such a result would be improper.

The County further argues that a "failure to warn" claim is based in pure negligence rather than medical malpractice and thus would not be subject to the requirements of the THCLA. *See, e.g., Bradshaw v. Daniel*, 854 S.W.2d 865 (Tenn. 1993). *Bradshaw*, however, was decided prior to the enactment of the most recent version of the THCLA with its broader definition of a health care liability action. Having determined that the THCLA is not applicable to the County's claim for indemnity, we decline to address the County's failure to warn argument. We conclude that the trial court erred in dismissing the County's claim against Rudd for failure to comply with the statutory requirements of the THCLA.

## VI. Summary Judgment

Finally, Rudd contends that even if this Court determines that the dismissal of the County's third-party complaint was improper, Rudd is still entitled to a grant of summary judgment. Rudd's argument in support of a grant of summary judgment, however, is essentially a repetition of its position considered above. Having rejected Rudd's

argument that the THCLA is applicable to the County's claim for indemnification, we also determine that such an argument would not provide a basis for a grant of summary judgment. We also note that the trial court did not rule on Rudd's motion for summary judgment; therefore, this Court could not address it in the first instance. *See Dorrier v. Dark,* 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . ."); *In re Estate of Boykin,* 295 S.W.3d 632, 636 (Tenn. Ct. App. 2008) ("At the appellate level, 'we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . .'") (quoting *Dorrier*, 537 S.W.2d at 890).

## VII.  Conclusion

For the foregoing reasons, we reverse the trial court's grant of Rudd's motion to dismiss the third-party complaint filed by the County. We remand this matter to the trial court for further proceedings consistent with this Opinion. Costs on appeal are taxed to the appellee, Rudd Medical Services, PLC.

_____
THOMAS R. FRIERSON, II, JUDGE