IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 17, 2021 Session

## DEBRA SUE BYINGTON v. JAMIE REAVES, D.O., ET AL.

**Appeal from the Circuit Court for Sullivan County**
**No. C42774M        John S. McLellan, III, Judge**

———————————————

**No. E2020-01211-COA-R3-CV**

———————————————

This is a health care liability case. The trial court granted Appellees' motion to dismiss because Appellant failed to provide Appellees with the proper pre-suit notice under Tennessee Code Annotated section 29-26-121(a)(1). Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and ARNOLD B. GOLDIN, J., joined.

Daniel D. Coughlin, Bristol, Tennessee, for the appellant, Debra Sue Byington.

Jimmie C. Miller and Meredith B. Humbert, Kingsport, Tennessee, for the appellees, Jamie Reaves, D.O. and CallaDerm, PLLC.

## OPINION

### I.      Background

On March 28, 2018, Appellant Debra Sue Byington visited Jamie Reaves, D.O., at CallaDerm, PLLC (together, "Appellees"), for an evaluation concerning a lesion on the right side of her nose. A biopsy revealed that the lesion was a pigmented basal cell carcinoma. Dr. Reaves recommended Mohs surgery to treat the cancer, and Ms. Byington returned to Appellees to begin treatment on April 24, 2018. Mohs surgery is performed in stages where thin layers of tissue are gradually removed from the cancerous site thus sparing tissue that does not contain cancerous cells. *See Mohs Surgery*, SKIN CANCER FOUNDATION, https://www.skincancer.org/treatment-resources/mohs-surgery/ (last visited

Apr. 14, 2021). Unfortunately, the cancerous cells contained in Ms. Byington's lesion pervaded through all layers of her nose tissue, and the Mohs surgery effectively resulted in removal of her right nostril, leaving her noticeably disfigured.

On April 23, 2019, Ms. Byington sent a "Notice of Claim Pursuant to TENN. CODE ANN. § 29-26-121" (the "Notice") to Appellees advising that she was "asserting a potential claim for health care liability against Dr. Jami[e] Reaves and CallaDerm, PLLC concerning the events which took place during and just prior to [her] Mohs surgery at CallaDerm, PLLC on April 24, 2018." Ms. Byington enclosed a HIPAA-compliant authorization for the release of her medical information. The following day, on April 24, 2019, Ms. Byington filed a complaint ("initial complaint") in the Sullivan County Circuit Court ("trial court") alleging, in pertinent part, that: (1) Appellees fraudulently induced Ms. Byington into undergoing the Mohs surgery; (2) due to the fraudulent inducement, Appellees did not receive Ms. Byington's informed consent to perform the Mohs surgery; (3) Dr. Reaves committed intentional battery on Ms. Byington by performing the surgery; (4) Dr. Reaves failed to adhere to the standard of care in Kingsport; and (5) Dr. Reaves failed to inform Ms. Byington of alternative treatments. Appellees received Ms. Byington's Notice on April 25, 2019 and were served with the initial complaint on April 29, 2019.

On May 29, 2019, Appellees filed a motion to dismiss ("initial motion to dismiss") alleging that Ms. Byington's initial complaint failed to comply with several requirements of the Tennessee Health Care Liability Act ("HCLA"). Specifically, Appellees alleged that Ms. Byington failed to provide them with written pre-suit notice of the potential HCLA claim at least 60 days prior to filing the action, and that she failed to file a Certificate of Good Faith with the trial court. Rather than filing a response to Appellees' initial motion to dismiss, Ms. Byington voluntarily dismissed her lawsuit on June 19, 2019.

On August 16, 2019, Ms. Byington filed a second complaint ("second complaint") in the trial court in which she specifically alleged causes of action for "medical battery" and "medical malpractice" under the HCLA. Ms. Byington included a Certificate of Good Faith with this filing, but she did not serve Appellees with another pre-suit notice. On June 22, 2020, Appellees filed a second motion to dismiss ("second motion to dismiss"), alleging that Ms. Byington failed to provide them with the required pre-suit notice of the potential HCLA claim within the 60 days before she filed her second complaint, as required under the HCLA. Ms. Byington filed a response to the second motion to dismiss on August 10, 2020.

On August 18, 2020, the trial court heard the second motion to dismiss and granted the motion by order entered the same day. The trial court found, in pertinent part, that: (1) Ms. Byington's initial complaint was a health care liability action and was subject to the pre-suit requirements of the HCLA; (2) Ms. Byington failed to send a new pre-suit notice to Appellees after she voluntarily dismissed the initial complaint but before she filed her second complaint; and (3) dismissal of the second complaint was mandatory because a

- 2 -

plaintiff must provide pre-suit notice to prospective health care defendants each time a complaint for health care liability is filed. Ms. Byington appeals.

## II. Issue

Although the parties raise several issues on appeal, we perceive that there is one dispositive issue: Whether the trial court erred in granting Appellees' motion to dismiss Ms. Byington's second complaint.

## III. Standard of Review

"A motion to dismiss for failure to state a claim is the proper method for challenging whether a plaintiff has complied with the [HCLA]'s pre-suit notice . . . requirements." *Ellithorpe v. Weismark*, 479 S.W.3d 818, 823 (Tenn. 2015) (citing *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012)). A motion to dismiss challenges the legal sufficiency of the complaint rather than the strength of the plaintiff's proof or evidence. *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 237 (Tenn. 2014) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)). "In analyzing the legal sufficiency of the complaint, we must presume that all factual allegations in the complaint are true and construe them in favor of the plaintiff." *Foster v. Chiles*, 467 S.W.3d 911, 914 (Tenn. 2015) (citing *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011) (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn.1997))). We review a motion to dismiss *de novo* with no presumption of correctness. *See Myers*, 382 S.W.3d at 307.

## IV. Analysis

Tennessee Code Annotated section 29-26-121(a)(1) provides that "any person . . . asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability . . . ." Tenn. Code Ann. § 29-26-121(a)(1). The trial court dismissed Ms. Byington's second complaint because she failed to provide Appellees with the required 60-day pre-suit notice under the HCLA. Ms. Byington argues that the Notice she sent on April 23, 2019, one day before filing her initial complaint, actually constitutes notice of her second complaint, which she filed on August 16, 2019. Because the Notice was filed more than 60 days prior to her second complaint, Ms. Byington contends that she satisfied the notice requirements of Tennessee Code Annotated section 29-26-121(a)(1). In support of her argument that the Notice pertained to the second complaint, rather than the initial complaint, Ms. Byington references a paragraph from her initial complaint, wherein she alleged: "Since this present Complaint is based upon the tort of battery, not negligence, it was not necessary that Defendants be served with a notice of potential claim 60 days before the suit is filed." Based on this language, Ms. Byington argues that she specifically "disclaimed" the notice requirement

in her initial complaint. In other words, she maintains that the Notice was unnecessary to the tort claims asserted in her initial complaint and could only apply to the health care liability claims she asserted in her second complaint.

As an initial matter, a plaintiff cannot "disclaim" the HCLA pre-suit requirements by asserting health care claims under the guise of common law torts. Furthermore, at the hearing on the motion to dismiss and at oral argument before this Court, counsel for Ms. Byington conceded that the initial complaint included health care liability claims. The Tennessee Supreme Court has held that the clear legislative intent behind the HCLA is that "*all* civil actions alleging that a covered health care provider . . . [has] caused an injury related to the provision of, or failure to provide health care services be subject to the pre-suit notice and certificate of good faith requirements, regardless of any other claims, causes of action, or theories of liability alleged in the complaint." *Ellithorpe*, 479 S.W.3d at 827 (emphasis in original); *see also* Tenn. Code Ann. § 29-26-101(a)(1) ("'Health care liability action' means any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based."). Accordingly, Ms. Byington's initial complaint was "subject to the pre-suit notice and certificate of good faith requirements," regardless of whether the initial complaint alleged additional causes of action sounding outside healthcare liability. *Ellithorpe*, 479 S.W.3d at 827; *see also* Tenn. Code Ann. § 29-26-101(a)(1).

Because Ms. Byington could not disclaim the pre-suit notice requirement in her initial complaint, and because her initial complaint included health care liability claims, it is axiomatic that the Notice she sent before filing the initial complaint applied only to the initial complaint. This conclusion is most aligned with Tennessee law and public policy. As the Tennessee Supreme Court has explained, "[t]he notice statute, § 29-26-121, ensures that health care defendants are provided with timely notice of potential claims prior to the commencement of litigation." *Foster*, 467 S.W.3d at 915 (citing *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 564 (Tenn. 2013)); *see also Myers*, 382 S.W.3d at 309. Timely notice of potential claims allows defendants "the opportunity to investigate the merits of a claim and to pursue settlement negotiations before suit is filed." *Foster*, 467 S.W.3d at 915 (citing *Stevens*, 418 S.W.3d at 564); *see also Myers*, 382 S.W.3d at 309. Early resolution of claims not only benefits the parties but is also an efficient use of judicial resources and, consequently, good public policy. *Foster*, 467 S.W.3d at 915.

Here, Appellees received the Notice on April 25, 2019. Four days later, Appellees were served with the initial complaint, which included health care liability claims. Thereafter, Appellees: (1) investigated the merits of the initial complaint; (2) determined it did not comply with the HCLA; and (3) filed a motion to dismiss it. Upon Ms. Byington's voluntary nonsuit of the initial complaint, any pending health care liability claims against Appellees were extinguished. The voluntary nonsuit also abrogated the Notice Ms.

Byington sent to Appellees. Simply put, Appellees were no longer on notice that Ms. Byington might pursue a cause of action for health care liability against them. The filing of Ms. Byington's second complaint on August 16, 2019, "was the institution of a new and independent action." *Id.* at 916 (citing *Myers*, 382 S.W.3d at 309). Because Ms. Byington failed to send Appellees a new notice of potential health care liability claims, Appellees "had no advance notice of the second suit, no chance to investigate the claim, and no opportunity to pursue settlement negotiations before the suit was filed." *Id.* This is contrary to public policy and "was not the result intended by the Legislature in enacting § 29-26-121(a)(1)." *Id.* To preclude this outcome, the Tennessee Supreme Court has held that Tennessee Code Annotated section 29-26-121(a)(1) "requires that plaintiffs provide pre-suit notice to prospective health care defendants *each time* a complaint is filed." *Id.* (emphasis added). This pre-suit notice is "fundamental to the validity of the . . . statute[]" and is mandatory. *Myers*, 382 S.W.3d at 309. Accordingly, plaintiffs must strictly comply with the notice provision—substantial compliance is insufficient. *Foster*, 467 S.W.3d at 915. When she neglected to provide Appellees with a new notice that she would be filing another health care liability action against them, Ms. Byington failed to strictly comply with section 29-26-121(a)(1). Thus, we conclude that the trial court's dismissal of her second complaint was proper.

## V. Conclusion

For the foregoing reasons we affirm the trial court's order dismissing Ms. Byington's lawsuit and remand the case for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against Appellant, Debra Sue Byington, for all of which execution may issue if necessary.


      s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE