# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
February 13, 2024 Session

## EUGENE MOXLEY v. AMISUB SFH, INC. D/B/A SAINT FRANCIS HOSPITAL ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-4603-20     Cedrick D. Wooten, Judge**

_____

### No. W2023-00220-COA-R3-CV

_____

This is the second appeal in this healthcare liability case. In the first appeal, which was taken under Tennessee Rule of Appellate Procedure 9, this Court reversed the trial court's denial of Appellees'/healthcare providers' Tennessee Rule of Civil Procedure 12.02(6) motion. The trial court held that, although Appellant/patient failed to substantially comply with the pre-suit notice requirement of Tennessee Code Annotated section 29-26-121(a)(2)(E), Appellant showed extraordinary cause to excuse the noncompliance. The only question certified in the Rule 9 appeal was whether the trial court erred in finding extraordinary cause. We determined that it did and reversed the extraordinary cause finding but left undisturbed the trial court's finding on substantial compliance. On remand, the trial court granted Appellees' motion to dismiss without hearing. Now, in this Tennessee Rule of Appellate Procedure 3 appeal, we review the trial court's initial finding that Appellant did not substantially comply with the statutory requirements. Because the trial court applied an incorrect legal standard in so finding, we vacate the order granting Appellees' motion to dismiss and remand for reconsideration of the question of substantial compliance under the correct legal standard.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JEFFREY USMAN, J., joined.

William Bryan Smith, Memphis, Tennessee, and A. Wilson Wages, Millington, Tennessee, for the appellant, Eugene Moxley.

Karen S. Koplon and Megan Lane, Memphis, Tennessee, for the appellees, Kirsna Norris Chapman, and AMISUB (SFH), Inc. d/b/a St. Francis Hospital.

Joseph M. Clark and Raleigh Kent Francis, Memphis, Tennessee, for the appellees, Zachary K. Corr and The Urology Group.

## MEMORANDUM OPINION[1]

### I. Background

This is the second appeal in this healthcare liability case. The first appeal, *Moxley v. Amisub SFH, Inc.*, No. W2021-01422-COA-R9-CV, 2022 WL 3715056 (Tenn. Ct. App. Aug. 29, 2022) ("*Moxley I*"), was a Tennessee Rule of Appellate Procedure 9 appeal. Concerning the basis of the lawsuit, the *Moxley I* Court explained that

> [t]he complaint filed in this case alleges that Plaintiff Eugene Moxley was injured due to medical negligence during the course of a cancer treatment on July 5, 2019. On July 3, 2020, Plaintiff's counsel, A. Wilson Wages, sent the statutorily required pre-suit notice of a potential health care liability claim to twelve possible defendants. Tennessee Code Annotated section 29-26-121(a)(2)(E) provides that pre-suit notice must include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to *obtain* complete medical records from each other provider being sent a notice." (Emphasis added). Plaintiff admits that a mistake was made with respect to the HIPAA authorizations he sent to each provider.
>
> ***
>
> On October 30, 2020, Plaintiff initiated this lawsuit by filing a complaint against four defendants—Nurse Chapman, The Urology Group, PC, Dr. Zachary Corr, and St. Francis Hospital [(together, "Appellees")]. Plaintiff's counsel, Mr. Wages, attached an affidavit stating that he had complied with the pre-suit notice requirements and, among other things, sent "a HIPAA compliant medical authorization permitting the providers who were sent a notice to obtain medi[c]al records from the other providers." He attached all of the pre-suit notice letters and enclosed authorization forms sent on the dates mentioned above.

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

On January 25, 2021, St. Francis and Nurse Chapman filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6), alleging failure to comply with Tennessee Code Annotated section 29-26-121(a)(2)(E). St. Francis and Nurse Chapman pointed out that the HIPAA authorization forms they received with pre-suit notice allowed each of them to "release" medical records but did not state that they could procure records from other providers. As such, they argued that Plaintiff had failed to substantially comply with the statute's requirement that pre-suit notice include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E).

*Moxley I*, 2022 WL 3715056, at *1-*2. The remaining Appellees subsequently joined in the motion to dismiss. In opposing the motion, Mr. Wages asserted that he had substantially complied with the statutory requirements. Specifically, "[h]e suggested that each provider should have known that authorizations had been sent to all of the other potential defendants allowing the 'release' of records, such that 'everyone involved could obtain copies of the relevant records' if they simply called and requested them." *Id.* at *3. In the alternative, Mr. Wages submitted an affidavit outlining certain facts that he alleged amounted to extraordinary cause to excuse any noncompliance. *Id*.

The trial court (at that time Judge Jerry Stokes) denied Appellees' motion to dismiss in the July 26, 2021 order, which gave rise to the Rule 9 appeal in *Moxley I*. Therein, Judge Stokes held that:

> If the defendant providers do not receive the benefit conferred to them under Tenn. Code Ann. § 29-26-121, that is the method by which prejudice is measured. In this case, the benefit conferred under § 29-26-121(a)(2) is that each defendant provider is to obtain all of the medical records of the Plaintiff from the other providers receiving pre-suit notice. The Defendants in this case were deprived of that benefit, and thus, were prejudiced. As a result, this Court finds that Plaintiff did not substantially comply with the pre-suit notice statute, Tenn. Code Ann. § 29-26-121(a)(2).

Although the trial court held that Mr. Moxley failed to substantially comply with the pre-suit notice requirement of Tennessee Code Annotated section 29-26-121(a)(2)(E), it ultimately denied the motion to dismiss on its holding that Mr. Moxley's attorney had shown extraordinary cause to excuse non-compliance with the statute. Specifically, Judge Stokes held:

> This Court finds that each individual reason cited by Mr. Wages, standing alone, does not constitute extraordinary cause for not complying with the stat[ute]. However, the cumulative effect of all the reasons stated by Mr.

Wages under oath lead the Court to exercise its discretion to find that all of the events described by Mr. Wages, which are not disputed factually, and almost all of which occurred leading up to or near the time of the pre-suit notice deadline, constitute extraordinary cause to excuse [non-]compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E).

The sole issue certified in *Moxley I* was "whether the trial court erred in denying the defendants' motion to dismiss based on its finding that 'extraordinary cause' existed to excuse the plaintiff's failure to comply with the statutory pre-suit notice requirements." *Moxley I,* 2022 WL 3715056, at *1. Importantly, in *Moxley I*, we stated, "**[T]he trial court's initial ruling that Plaintiff failed to substantially comply with the pre-suit notice statute is not before us**. We are only reviewing the trial court's subsequent ruling that the plaintiff demonstrated extraordinary cause for the noncompliance." *Id*. at *6 (emphasis added). In short, we declined to review Judge Stokes' ruling on substantial compliance as set out in his July 26, 2021 order, *supra*.

On January 11, 2023, the trial court (now Judge Cedric D. Wooten) held a status hearing. No proof was taken, but each of the attorneys was allowed a statement, discussed *infra*. By order of January 18, 2023, Judge Wooten granted the Appellees' Tennessee Rule of Civil Procedure 12.02(6) motion, dismissing Mr. Moxley's case with prejudice. In relevant part, Judge Wooten's order reads:

> Upon receipt of the Tennessee Court of Appeals Opinion, *Moxlev v. Amisub SFH. Inc.*, No. W2021-01422-COA-R9-CV, 2022 WL 3715056 (Tenn. Ct. App, Aug. 29, 2022), the Judgment entered on August 29, 2022, and the Mandate entered on November 2, 2022, this Court finds that . . . this matter should be dismissed with prejudice with costs assessed to the Plaintiff.
>
> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that . . .
>
> Plaintiff's Complaint is DISMISSED WITH PREJUDICE as to all Defendants, with costs assessed to the Plaintiff.

Mr. Moxley appeals.

## II. Issues

Mr. Moxley raises the following issues for review as stated in his brief:

1. The trial court erred when it held Moxley failed to comply substantially with the requirements of Tenn. Code Ann. § 29-26121(a)(2)(E) where his HIPAA-compliant medical release allowed each potential defendant receiving notice of intent to sue to obtain medical records from every other

potential defendant receiving notice simply by requesting those records.

2. The trial court erred when it dismissed the case with prejudice holding that Moxley was not entitled to the extension of the limitations period available to an HCLA plaintiff giving notice to all potential defendants under Tenn. Code Ann. § 29-26-121(c) where each potential defendant received pre-suit notice of suit.

3. The trial court erred when it refused to excuse any errors in the content of Moxley's HIPAA-complaint release when the defects in his factual presentation identified by this Court in [*Moxley I*], were addressed by a supplemental affidavit on remand.

4. With the supplemental facts produced on remand, the constellation of issues confronted by Moxley's counsel at or near the time pre-suit notice of this Health Care Liability Action was due to be served amounted to extraordinary cause excusing compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E).

## III. Standard of Review

In *Martin v. Rolling Hills Hospital, LLC*, 600 S.W.3d 322, 334-35 (Tenn. 2020), the Tennessee Supreme Court explained that the proper avenue to challenge a plaintiff's compliance with the pre-suit notice requirements of Tennessee Code Annotated section 29-26-121 is by a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss. A trial court's grant of a motion to dismiss is a question of law, which we review *de novo* with no presumption of correctness. *Ellithorpe v. Weismark*, 479 S.W.3d 818, 824 (Tenn. 2015).

## IV. Analysis

### A. Substantial Compliance

In *Moxley I*, we took up only the question of whether Judge Stokes' finding of extraordinary cause was correct and found that it was not. However, as set out above, we specifically declined to address Judge Stokes' substantial compliance ruling, *i.e.,* "[**T]he trial court's initial ruling that Plaintiff failed to substantially comply with the pre-suit notice statute is not before us**. We are only reviewing the trial court's subsequent ruling that the plaintiff demonstrated extraordinary cause for the noncompliance." *Moxley I*, 2022 WL 3715056, at *6 (emphasis added). In stating the disposition of the case, the *Moxley I* Court held that, "The decision of the circuit court is reversed. . . ." *Id.* at *14. However, we did not specify that only the trial court's ruling on extraordinary cause was reversed, although extraordinary cause was the only question we addressed in *Moxley I*. This led to some confusion on remand.

Following remand in *Moxley I*, Judge Wooten conducted a status hearing on January 11, 2023. As noted above, no evidence was adduced at the hearing, but the parties'

attorneys were given an opportunity to argue. The Appellant argued that the trial court could reconsider its decision regarding extraordinary cause based on Mr. Wage's second affidavit. In addition, Appellant argued that the pre-suit notices "allowed all of the defendants to obtain the records and they were fully in substantial compliance." Appellees did not address either of Appellant's arguments. Rather, they argued that this Court's holding in *Moxley I* mandated the trial court to grant their Rule 12 motion to dismiss the case. Appellant countered that the *Moxley I* Court's decision merely addressed the question of extraordinary cause, but did not address substantial compliance. Thus, Appellant argued that the trial court was in a position to take up the question of substantial compliance on remand from *Moxley I*. Appellant's interpretation of our holding in *Moxley I* was correct; however, it appears that the trial court adopted Appellees' reading of *Moxley I*. As discussed above, in *Moxley I*, we certified the sole question of whether Judge Stokes' erred in finding extraordinary cause, so our reversal extended only to the extraordinary cause finding. In short, our intent in *Moxley I* was to reverse Judge Stokes' extraordinary cause ruling and to leave undisturbed his substantial compliance ruling—which question could then be revisited on remand or in a Tennessee Rule of Appellate Procedure 3 appeal. However, in granting Appellees' motion to dismiss, Judge Wooten interpreted our mandate to require "reversal" of Judge Stokes' order, *i.e.*, entry of an order granting the motion to dismiss without further inquiry. Accordingly, Judge Wooten did not revisit the question of substantial compliance, so we do so now.

As noted above, Appellees' motion to dismiss asserts that the HIPAA-authorization forms they received with pre-suit notice allowed each of them to "release" medical records but did not state that they could procure records from other providers. As such, they argued that Mr. Moxley failed to substantially comply with the statute's requirement that pre-suit notice include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E); *Moxley I*, at *2. As explained in *Moxley I*:

> The pre-suit notice letter sent to Nurse Chapman included twelve separate HIPAA authorization forms. Each of the twelve forms Ms. Chapman received designated her as the "releasing provider." Thus, the forms she received contained language stating that she could "release" medical records to other entities. For example:
>
> > "I, Eugene T. Moxley, ... do hereby authorize Kirsna J. Norris-Chapman, R.N., to release to The Urology Group, the medical records ... relating to my treatment[.]"
> >
> > "I, Eugene T. Moxley, ... do hereby authorize Kirsna J. Norris-Chapman, R.N., to release to St. Francis Hospital-Memphis, the medical records ... relating to my treatment[.]"

> "I, Eugene T. Moxley, ... do hereby authorize Kirsna J. Norris-Chapman, R.N., to release to Zachary K. Corr, M.D., the medical records ... relating to my treatment[.]"

However, none of the twelve forms Nurse Chapman received contained language stating that she could "obtain" any medical records, although Plaintiff did send one authorization to Nurse Chapman that included her name in both fields as follows:

> "I, Eugene T. Moxley, . . . do hereby authorize Kirsna J. Norris-Chapman, R.N., to release to Kirsna J. Norris-Chapman, R.N., the medical records ... relating to my treatment[.]"

The same mistake was repeated with the forms sent to all twelve potential defendants.

*Moxley I*, at *1. So, Mr. Moxley's notices allowed the Appellees' to release information to other Appellees but did not specify that the Appellees could **obtain** the records from the other Appellees. The gravamen of Judge Stokes' ruling that Mr. Moxley failed to substantially comply with section 29-26-121 was that Appellees were deprived of the benefit "conferred under § 29-26-121(a)(2) [] that each defendant provider is to **obtain** all of the medical records of the Plaintiff **from the other providers receiving pre-suit notice**." (Emphases added). In this regard, Judge Stokes held Mr. Moxley to strict compliance with the statute as opposed to substantial compliance, *i.e.* the trial court focused on whom Appellees could obtain the records from, and not on whether Appellees could obtain the records at all. Respectfully, the standard applicable to the question of substantial compliance is more complex than strict compliance with the statute. Indeed, the Tennessee Supreme Court has held that the requirements contained in section 29-26-121(a)(2) (which include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice," Tenn. Code Ann. § 29-26-121(a)(2)(E)) are "directory" and may be satisfied by "substantial compliance." *Stevens ex rel Stevens v. Hickman Community Healthcare Services, Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013) (evaluating whether a plaintiff substantially complied with Section 121(a)(2)(E)); *see also Arden v. Kozawa*, 466 S.W.3d 758, 762-64 (Tenn. 2015) (holding that the requirements of Section 121(a)(3)(B) and (a)(4) may be satisfied through substantial compliance); *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 520 (Tenn. 2014) (holding that the affidavit requirement of Section 121(a)(3)(B) and (a)(4) may be satisfied by substantial compliance). So, strict compliance with section 121 is not required for substantial compliance.[2] Indeed, the ultimate purpose of the pre-suit notice requirement is to allow

---

[2] In contrast, the *Martin* Court held that for a medical authorization to be HIPAA compliant, the

potential defendants to investigate the merits of the claims against them and to pursue settlement negotiations prior to the lawsuit being filed. *See Martin*, 600 S.W.3d at 331; *Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 86 (Tenn. 2018). In short, "[n]ot every non-compliant HIPAA medical authorization will result in prejudice." *Stevens*, 418 S.W.3d at 556. Concerning the question of prejudice, the *Martin* Court clarified that

> prejudice is not a separate and independent analytical element; rather, as *Stevens* explained, prejudice is a consideration relevant to determining whether a plaintiff has substantially complied. Prejudice, or the absence of prejudice, is especially relevant to evaluating the extent and significance of the plaintiff's noncompliance. If a plaintiff's noncompliance with Section 121 frustrates or interferes with the purposes of Section 121 or prevents the defendant from receiving a benefit Section 121 confers, then the plaintiff likely has not substantially complied with Section 121. On the other hand, if the plaintiff's noncompliance neither frustrates or interferes with the purposes of Section 121 nor prevents a defendant from receiving a benefit the statute confers, then a court is more likely to determine that the plaintiff has substantially complied.

*Martin*, 600 S.W.3d at 333-34 (internal citations omitted); *see also Hayward v. Chattanooga-Hamilton Cty. Hosp. Auth., d/b/a Erlanger Health Systems, et al.*, 680 S.W.3d 252, 260 (Tenn. Ct. App. 2023), *perm. app. denied* (Tenn. Oct. 13, 2013) (citing

---

authorization must include all six core elements required by federal law. 600 S.W.3d at 334. In other words, while the plaintiff may satisfy the requirements of Tennessee Code Annotated section 29-26-121(a)(2) by substantial compliance, it must strictly comply with the relevant federal regulation, 45 C.F.R. § 164.508(c)(1). The regulation provides that a valid HIPAA-compliant medical authorization must contain the following core elements:

> (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
> (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
> (iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.
> (iv) A description of each purpose of the requested use or disclosure. . . .
> (v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. . . .
> (vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

A medical authorization is not HIPAA compliant under federal law "if '[t]he authorization has not been filled out completely, with respect to 'a core element." *Martin*, 600 S.W.3d at 334 (quoting 45 C.F.R. § 164.508(b)(2)(ii)).

*Martin*, 600 S.W.3d at 334). Again, Judge Stokes' ruling was that Mr. Moxley's pre-suit notice prejudiced Appellees insofar as they were denied the benefit of "obtain[ing] all of [Mr. Moxley's] medical records **from the other providers receiving pre-suit notice**." (Emphasis added). Respectfully, "the conclusion that a deficient medical authorization would ordinarily deprive a defendant of the benefit of Section 121 does not mean that such deficiency will always result in such deprivation. . . . If a defective medical authorization automatically meant a plaintiff failed to comply with section 121 pre-suit notice, there would be no reason to consider prejudice." *Hayward*, 680 S.W.3d at 261. However, "[I]f the plaintiff's noncompliance neither frustrates or interferes with the purposes of Section 121 nor prevents a defendant from receiving a benefit the statute confers, then a court is more likely to determine that the plaintiff has substantially complied." *Martin*, 600 S.W.3d at 334 (citing *Stevens*, 418 S.W.3d at 555). To date, the trial court has not resolved this question.

### B. Supplemental Affidavit

Following remand in *Moxley I*, Mr. Wages submitted a second affidavit, which he alleges contains additional facts that would support a finding of extraordinary cause, or at least would allow the trial court to revisit that issue. We have reviewed the affidavit and conclude that the facts contained therein were known, or could have been know, to Mr. Wages at the outset of this lawsuit. In fact, Mr. Wages' initial affidavit (filed before *Moxley I*) contains ostensibly the same facts that he reiterates and expands upon in his second affidavit. In short, the material facts surrounding Mr. Wages failure to comply with the pre-suit notice requirements were considered by Judge Stokes in finding extraordinary cause. So, having reversed Judge Stokes' extraordinary cause finding, the *Moxley I* decision precludes the trial court's reconsideration of extraordinary cause on the reiterated facts outlined in Mr. Wages' second affidavit.

### V. Conclusion

For the foregoing reasons, the trial court's order is vacated, and all remaining issues are pretermitted. The case is remanded for such further proceedings as may be necessary and are consistent with the opinion, including consideration of the question of substantial compliance under the correct standard. Costs of the appeal are assessed one-half to Appellant, Eugene Moxley, and one-half to Appellees, Kirsna Norris Chapman, AMISUB (SFH), Inc. d/b/a St. Francis Hospital, Zachary K. Corr, and The Urology Group. Execution for costs issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE