IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 3, 2024 Session

## JONATHAN GARRETT GRACE ET AL. v. ELIZABETH ANN BAKER GRACE

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-FD-17-1        Adrienne Gilliam Fry, Judge**

_____

### No. M2023-01015-COA-R3-CV
_____

This is a post-divorce parent relocation dispute. After the mother relocated out of state with the child without notice, the father filed a petition objecting to her relocation, a petition for criminal contempt on multiple grounds, and a petition to modify the parenting plan. The mother then filed a petition to approve her relocation and a petition challenging the child support calculations in the court's November 6, 2023 order. After conducting a best-interest analysis, the court adopted the mother's proposed parenting plan with modifications that removed the father's supervision requirement, required the mother to bear transportation costs, and required the mother to give the father notice of the child's school and extracurricular activities, among other modifications. The trial court also granted the father's first amended petition for three counts of criminal contempt, imposing a sentence of 30 days, with 10 days suspended, "based upon Mother's full and complete compliance, during the next five (5) years, with the terms set forth within this judgment." Father appeals, contending that the trial court abused its discretion by applying an improper legal standard in respect to the notice requirements of the parent relocation statute, Tennessee Code Annotated § 36-6-108. We find that the trial court did not abuse its discretion in conducting a best-interest analysis, affirm the trial court's determination that the relocation was in the best interest of the child, and affirm the trial court's adoption of the mother's parenting plan with modifications.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Roger A. Maness and Michael Kenneth Williamson, Clarksville, Tennessee, for the appellant, Jonathan Garrett Grace.

Melissa Ann Belcher, Brentwood, Tennessee, for the appellee, Elizabeth Ann Baker Grace.

John Douglas Parker, Clarksville, Tennessee, guardian ad litem.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Jonathan Garrett Grace (hereinafter "Father") and Elizabeth Ann Baker Grace, now Diemoz, (hereinafter "Mother") were married on October 12, 2010, and had one child River Christian Grace (hereinafter "the Child"). The parties were divorced in Christian County, Kentucky, on October 22, 2012, when the Child was one year old. In 2017, the Chancery Court of Montgomery County, Tennessee, registered the foreign decree in its court.

From 2017 until 2021, Father's parenting time was limited to three, six-hour blocks per month. Then on January 29, 2021, the court granted Father's petition to modify, substantially increasing his visitation to a total of 90 days per year and including overnight visitation, alternating holidays, week-long visitation over breaks, and alternating "week-on/week-off" parenting time during the summer break. Father's visitation was to be supervised by his parents or their designee.

Father then exercised regular visitation in accordance with the parenting plan.[1] That summer, on July 16, 2021, Father returned the Child to Mother after his week of summer visitation. The next day, with no notice to Father, Mother and her husband relocated with the Child to Delaware.

On July 23, the Child was scheduled to return to Father for parenting time, but Mother texted Father, stating, "We need to reschedule the visitation for reasons beyond my control. We are out of state and cannot make it to Clarksville." On July 27, Mother's counsel[2] notified Father's counsel via email that Mother was relocating but refused to provide the location of Mother and the Child. On that same day, Father filed a motion for criminal contempt for Mother's violations of the parenting plan.

On August 24, 2021, Father filed a petition to modify the parenting plan and his objection to relocation; he amended that petition on December 1, 2021. On December 9, 2021, Mother filed a petition to relocate with the Child and for modification of the existing permanent parenting plan. On September 9, 2022, Father amended his petition a second

---

[1] In the meantime, Mother appealed the trial court's January 29, 2021 decision. It was pending before this court when Mother relocated with the Child. This court's opinion and judgment were entered on September 13, 2022 (No. M2021-00116-COA-R3-CV).

[2] Mother's counsel at that time was her mother, Melissa Baker (now Melissa Belcher). Mother subsequently had different counsel during the trial court and appellate proceedings, but Melissa Belcher is again Mother's counsel on appeal.

time to update the court as to the pending appeal before this court and the pending petition for criminal contempt before the trial court. Father additionally requested that his requirement for supervised visitation be removed.

The matter was heard over three days in February and March 2023, after which the trial court made, in pertinent part, the following findings of facts and conclusions of law:

14. It is undisputed that as a result of the unilateral actions of the Mother in clear violation of the existing Order of the Court and Tennessee law, the Father was denied substantial parenting time with the parties' minor child to which he was entitled.

15. It is undisputed that the Mother left the jurisdiction of the Court with the minor child in violation of the existing Court Order and Tennessee Code Annotated § 36-6-108, (The Parental Relocation Statute).

16. It is undisputed that the Father did not know the whereabouts of the minor child and that the Mother and her counsel intentionally refused to notify the Father of the whereabouts of the child after unlawfully leaving the jurisdiction of the Court.

17. It is undisputed that the Father did not speak to the minor child until the 13th day of August 2021.

18. It is undisputed that the Father did not see the minor child again until the 23rd day of December 2021.

19. The record clearly reflects that the Mother, through prior counsel, made every effort to delay this matter as long as possible before it was ultimately heard on February 6, 2023, February 15, 2023, and March 27, 2023.

In its review of case law, the trial court noted that "there is very little guidance for the Court on this vexing fact pattern,"[3] then found that there was a "material and substantial

---

[3] Our legislature revised the statute governing parent relocation, Tennessee Code Annotated § 36-6-108, effective July 1, 2018. Prior to 2018, the statute applied different approaches to the approval of relocation based on whether parents spent "substantially equal intervals of time with the child." Tenn. Code Ann. § 36-6-108(c)–(d) (effective July 1, 2016 to June 30, 2018). Specifically, if both parents did not spend substantially equal periods of time with the child, there was a presumption toward relocation for the parent who spent the greater amount of time with the child. The applicable portion of the statute provided:

The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:

change of circumstances," conducted a best-interest analysis, and found that "Mother's relocation to Delaware is in the best interest" of the Child.

The court then adopted Mother's proposed parenting plan, maintaining Father's 90 days of visitation, but modifying it by removing the supervision requirement for Father's visitation, requiring Mother to bear transportation costs, granting the parties joint decision-making authority, and requiring Mother to give notice of the Child's medical, school, extracurricular, and other events, among other modifications.

On the criminal contempt charges, the court made the following findings:

28. Based on the evidence and this Court's assessment of the Mother's credibility,[4] the Court does not find the Mother's claimed confusion or misunderstanding of her obligations or the Father's parenting time to be based upon alleged reliance on faulty legal advice from her mother, prior counsel. Therefore, the Court does not believe the Mother to have a valid, or [mitigated], defense to the contempt allegations against her for Father's missed parenting time.

---

(A) The relocation does not have a reasonable purpose;

(B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or

(C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the noncustodial parent or the parent spending less time with the child.

Tenn. Code Ann. § 36-6-108(d)(1) (effective July 1, 2016 to June 30, 2018).

After the 2018 revision of the parent relocation statute, the presumption toward relocation was removed, and a best-interest analysis was prescribed for every instance in which a petition in opposition to relocation was filed. Tenn. Code Ann. § 36-6-108(c)(1). Consequently, much of the case law and parent relocation precedents set prior to 2018 have been abrogated by the revised statute.

[4] Regarding Mother's credibility, the trial court made the following general findings:

25. This Court heard this matter over three (3) days and heard hours upon hours of testimony. Additionally, the Court reviewed multiple boxes of the court file that reads like a temper tantrum of a petulant child not receiving what they want from the court and thereafter pursing every legal avenue to thwart the process and get what they want[—-] going so far as to file a Termination of Parental Rights Action against a parent who by all accounts is parenting to the best of their abilities.

26. The Court paid close attention to the Mother's attitude and demeanor. The Court finds that the Mother was knowledgeable when she chose to be and ignorant when knowledge did not suit her position. The Court does not find the Mother to be a credible witness.

29. Based on the evidence and this Court's assessment of the Mother's credibility, the Court does find that the Mother's claimed confusion or misunderstanding of her obligations to notify the Father of the relocation to be mitigated by faulty legal advice from her mother. Therefore, the Court does find a valid defense to the contempt allegations against the Mother for her woefully insufficient relocation notice to the Father pursuant to the Tennessee Relocation Statute.

30. The Court finds that the Father has proven contempt for failure to provide the child for Father's court ordered visitation time on three specific occasions:

a. The summer weeklong visitation starting July 23, 2021
b. CMCSS Fall Break 2021
c. Thanksgiving and Friday following 2021

The trial court sentenced Mother to 30 days, with 10 days suspended, "based on Mother's full and complete compliance, during the next five (5) years, with the terms and conditions set forth within this judgment."

Notably, after Father filed his notice of appeal, this court determined that the trial court's September 6, 2023 order was not yet final and appealable because the trial court had reserved the issue of child support. Therefore, this court remanded to the trial court in our October 17, 2023 order. In its November 6, 2023 order, the trial court calculated the child support obligation, modified the effective date, and calculated child support arrearages.[5] The court also gave mother credit for "two children who qualify as 'credit for in-home children.'"

The trial court then incorporated the findings from its September 6, 2023 order to constitute a final order and supplemented this court's record accordingly.

## ISSUES

Father contests the trial court's decision that the relocation was in the best interest of the Child, specifically arguing that the trial court abused its discretion in applying an improper legal standard according to the parent relocation notice requirements of Tennessee Code Annotated § 36-6-108.

---

[5] The arrearage calculations were based in part on this court's September 13, 2022 opinion (M2021-00116-COA-R3-CV) that modified the effective date for Father's new child support obligation and mandated that the trial court recalculate Father's arrearage on remand to include prejudgment and post-judgment interest.

## STANDARD OF REVIEW

This court reviews questions of law de novo with no presumption of correctness. *Hall v. Hall*, No. M2021-00757-COA-R3-CV, 2022 WL 1642700, at *2 (Tenn. Ct. App. May 24, 2022). We review findings of fact by the trial court de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d).

For parenting plan modifications, our Supreme Court has explained:

> A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. See Tenn. R. App. P. 13(d).

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692–93 (Tenn. 2013) (alteration in original) (citations omitted).

We review questions of statutory interpretation de novo. *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 723 (Tenn. 2024). "When a statute is clear, we apply

the plain meaning without complicating the task. Our obligation is simply to enforce the written language." *In re Est. of Tanner*, 295 S.W.3d 610, 613–14 (Tenn. 2009) (citations omitted). In order to do so, as explained by our Supreme Court, "[w]e give the words of a statute their 'natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) (citation omitted) (quoting *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015)). Further, "[w]e endeavor to construe statutes in a reasonable manner which avoids statutory conflict. We 'must presume that the Legislature did not intend an absurdity and adopt, if possible, a reasonable construction which provides for a harmonious operation of the laws.'" *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016) (citation omitted) (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)).

**ANALYSIS**

I. THE PARENT RELOCATION STATUTE

Father's sole issue on appeal is that the trial court abused its discretion in applying an improper legal standard according to the parent relocation notice requirements of Tennessee Code Annotated § 36-6-108. Specifically, Father contends that the trial court erred in making its best-interest determination because Mother did not give notice, and according to Father "a proper notice from the relocating parent is a prerequisite to approval for relocation under the statute." Therefore, Father "challenges the trial court's legal conclusion that it had the discretion to disregard the mandatory notice requirements of Tenn. Code Ann. § 36-6-108 and proceed to decide the case by applying a wide-open best interest analysis."

A. Notice Requirement

The parent relocation statute clearly outlines the process that is to be followed when "a parent who is spending intervals of time with a child desires to relocate outside the state." Tenn. Code Ann. § 36-6-108(a). First and importantly, "the relocating parent shall send a notice to the other parent . . . not later than sixty (60) days prior to the move." Tenn. Code Ann. § 36-6-108(a).

The statute then provides specifics of that notice:

Unless excused by the court for exigent circumstances, the notice shall be mailed not later than sixty (60) days prior to the move. The notice shall contain the following:

> (1) Statement of intent to move;
> (2) Location of proposed new residence;
> (3) Reasons for proposed relocation; and

- 7 -

(4) Statement that absent agreement between the parents or an objection by the nonrelocating parent within thirty (30) days of the date notice is sent by registered or certified mail in accordance with this subsection (a), the relocating parent will be permitted to do so by law.

Tenn. Code Ann. § 36-6-108(a).

It is undisputed here that Mother did not adhere to any portion of the statutory process required to initiate relocation. First, Mother provided no notice prior to the move even though it is undisputed that Mother was preparing to relocate more than six weeks in advance.[6] Accordingly, we concur in the trial court's conclusion that "Mother did indeed fail to abide by Tenn. Code Ann. § 36-6-108."

### B. Petition in Opposition to Relocation

Father argues that because Mother did not give notice, the trial court erred in making a best-interest determination, stating that "a proper notice from the relocating parent is a prerequisite to approval for relocation under the statute." He suggests that a "straight-up best interests analysis [is] to be conducted by the trial court *only after* proper notice of the intended relocation is given and only after the parties have failed to reach an agreement or after the non-relocating party has objected to the relocation." (Emphasis added).

While the parent relocation statute unequivocally requires that the relocating parent give the requisite notice, and there may be significant consequences for a parent who fails to comply with the statute, it is not the relocating parent's notice that spurs the trial court into action. Instead, as clearly stated in subsection (c)(1), it is the filing of the petition in opposition to relocation that triggers the action of the trial court. Specifically, the statute provides, "**If a petition in opposition to relocation is filed, the court shall determine whether relocation is in the best interest of the minor child**." Tenn. Code Ann. § 36-6-108(c)(1) (emphasis added). And it is well-established that "when the word 'shall' is used in a statute it is construed to be mandatory, not discretionary." *Home Builders Ass'n of Middle Tenn. v. Williamson Cnty.*, 304 S.W.3d 812, 819 (Tenn. 2010).

Even without the specific guidelines of the parent relocation statute, Tennessee courts have long relied upon the best interest of the child in steering child custody and visitation determinations. This court has explained, "In making decisions regarding the proper parenting arrangement for a child, 'the child's best interest is the paramount

---

[6] Mother's husband testified that he and Mother had decided to sell their house by May 2021. Mother testified that they began the process of selling their home on June 1, 2021, and relocated with the Child on July 17, 2021. This indicates a minimum of 47 days that she was aware of relocation without notifying Father. Nevertheless, the statute requires notice a minimum of sixty days prior to the move, unless excused for exigent circumstances.

consideration. It is the polestar, the alpha and omega.'" *Ward v. Ward*, No. M2012-01184-COA-R3CV, 2013 WL 3198157, at *16 (Tenn. Ct. App. June 20, 2013) (quoting *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983)) (citing Tenn. Code Ann. § 36-6-401(a)). Our legislature also instructs, "In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." Tenn. Code Ann. § 36-6-401(a).

We also find the guidance given by this court in *Rutherford* particularly applicable here:

> Parental relocation cases are frequently heartbreaking, with profound competing considerations and impact on both parents and the subject children. Delay does not improve them. The legislature has enacted a statute with explicit directions to the courts on the resolution of such cases, and we are required to follow the clear legislative directives in the statute.

*Rutherford v. Rutherford*, 416 S.W.3d 845, 855 (Tenn. Ct. App. 2013) (Kirby, J., concurring).

Here, due to Mother's failure to comply with the statute, Father had no choice but to act out of sequence with the instructions of the statute by filing the petition in opposition to relocation, after which Mother filed her belated petition to relocate. Nevertheless, with the filing of Father's petition in opposition to relocation, it then became mandatory for the trial court, as indicated by the statutory direction "shall" in subsection (c)(1), to determine whether relocation was in the best interest of the child.

The matter was heard over three days in February and March 2023. In the trial court's order that carefully considered the facts and law before it—with 309 findings of fact—the trial court determined that the most appropriate approach was to conduct a best-interest analysis. Guided by the parent relocation statute and case law that places the best interest of the child above all other interests, we agree with this determination.

Father's suggestion that the "best interests analysis [is] to be conducted by the trial court only after proper notice" adds language to the statute and likewise attributes a "forced or subtle construction that would extend . . . the statute's meaning." *Home Builders Ass'n.*, 304 S.W.3d at 817 (quoting *State v. Flemming*, 19 S.W.3d at 197). Finding the statute to be unambiguous, however, we follow the guidance of our Supreme Court and presume that the legislature intended what it said: "If a petition in opposition to relocation is filed, the court shall determine whether relocation is in the best interest of the minor child." Tenn. Code Ann. § 36-6-108(c)(1).

Because a best-interest determination is mandatory after the petition in opposition of relocation is filed, we find that the trial court did not abuse its discretion in conducting a best-interest analysis to determine whether relocation was in the best interest of the Child.

## C. The Best-Interest Analysis and Modification of the Parenting Plan

Father also takes issue with the trial court's best-interest analysis "comparing the child's situation in Delaware, living with the Mother, in contrast with the Father's situation in Tennessee. The trial court took into account the status of the child after he had been living in Delaware and attending Delaware schools for the better part of two (2) years." Contending this was reversible error, Father suggests:

> The trial court's judgment should be reversed to the extent it allowed the Mother to relocate to Delaware despite her not having complied with requirements of Tenn. Code Ann. § 36-6-108. The case should be remanded with instructions for the trial court to conduct a best interest hearing on a new parenting plan based on the child remaining in Tennessee.

The fact that it took two years after the unauthorized relocation for the case to be tried is problematic indeed. Moreover, we are sympathetic to Father's concerns pertaining to this delay, believing that an expedited hearing would have been more appropriate. Nevertheless, we find no statute or case law to support Father's recommended approach.

As subsection (c)(1) mandates, the trial court was required to make a best-interest determination based on factors listed in subsection (c)(2), which reads as follows:

> (2) In determining whether relocation is in the best interest of the minor child, the court shall consider the following factors:
>
> > (A) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life;
> >
> > (B) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
> >
> > (C) The feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties;

(D) The child's preference, if the child is twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(E) Whether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the nonrelocating parent;

(F) Whether the relocation of the child will enhance the general quality of life for both the relocating parent and the child, including, but not limited to, financial or emotional benefit or educational opportunity;

(G) The reasons of each parent for seeking or opposing the relocation; and

(H) Any other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a).

Tenn. Code Ann. § 36-6-108(c)(2).

If the relocation is found to be in the best interest of the child, "the court shall modify the permanent parenting plan as needed to account for the distance between the nonrelocating parent and the relocating parent." Tenn. Code Ann. § 36-6-108(c)(3). If the court finds that relocation is not in the child's best interest, "the court shall deny the petition for approval and . . . enter a modified permanent parenting plan that shall become effective only if the parent proposing to relocate elects to do so despite the court's decision denying the parent's petition for approval." Tenn. Code Ann. § 36-6-108(c)(4).

Then, for crafting a parenting plan, the statute provides the following direction:

(d) In fashioning a modified parenting plan under subdivisions (c)(3) and (4), the court shall consider and utilize available alternative arrangements to foster and continue the child's relationship with and access to the other parent. The court shall also assess the costs of transporting the child for visitation, and determine whether a deviation from the child support guidelines should be considered in light of all factors, including, but not limited to, additional costs incurred for transporting the child for visitation.

Tenn. Code Ann. § 36-6-108(d).

For the general goals of a parenting plan, our legislature directs:

A permanent parenting plan shall:

(1) Provide for the child's changing needs as the child grows and matures, in a way that **minimizes the need for further modifications to the permanent parenting plan**;

(2) Establish the authority and responsibilities of each parent with respect to the child, consistent with the criteria in this part;

(3) **Minimize the child's exposure to harmful parental conflict**;

Tenn. Code Ann. § 36-6-404 (emphasis added).

Finally, this court has reiterated these goals and explained our role in reviewing parenting plans fashioned by the trial court.

Indeed, "[b]y statute as well as case law, the welfare and best interests of the child are the paramount concern in custody, visitation, and residential placement determinations, and the goal of any such decision is to place the child in an environment that will best serve his or her needs." *Burden v. Burden*, 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007) (quoting *Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at *5 (Tenn. Ct. App. Oct. 15, 2004)). As such, "[t]rial courts have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and the appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation." *Reeder*, 375 S.W.3d at 278 (citing *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999)); *see also C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (quoting *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)) ("[D]etermining the details of parenting plans is peculiarly within the broad discretion of the trial judge.").

*Grissom v. Grissom*, 586 S.W.3d 387, 391 (Tenn. Ct. App. 2019).

After a three-day hearing, the trial court found "that it is appropriate to address the relocation as follows: **Mother's Relocation to Delaware is in the best interest of River Christian Grace.**" (Emphasis in original). The trial court then presented its findings for each of the best-interest factors provided in the parent relocation statute.

For Factor A, the trial court found that Mother "has maintained a strong, loving and nurturing relationship with the minor child and continuously provided a stable home

environment for the minor child." The trial court also considered the active role that Mother's husband played in the Child's life and the "two half-siblings living in the home," with whom the Child has a close relationship. The trial court found that "Father has never been alone with the minor child since before the parties' Divorce Decree was entered on October 22, 2012, and has had very little involvement." For these reasons, the trial court found that Factor A favored Mother.

The trial court found that Factor B also favored Mother, taking into consideration the special needs of the Child, along with Mother's active role in accommodating those needs.

Because Father would still be able to exercise his 90 days of visitation even with the relocation to Delaware, the trial court found that Factor C favored Mother.

Factor D, the minor child's preference, also favored Mother.

The trial court found that Factor E, whether there was an established pattern of conduct of Mother to thwart the relationship between the Child and Father, "**strongly**" favored Father. The court specifically noted: "1. It is undisputed that the Mother intentionally relocated to Delaware and willfully refused to allow the Father to know the whereabouts of the minor child. 2. It is undisputed that proper notice was not given under T.C.A. §36-6-108."

For Factor F, whether the relocation of the child will enhance the general quality of life for Mother and the Child, the trial court found that this factor favored Mother.

Factor G, each parent's reasons for seeking or opposing the relocation, was found to be equal for Mother and Father.

The trial court was in the difficult position of evaluating Father's petition in opposition to Mother's relocation *after* Mother had already relocated. Following the guidance of the statute, the trial court evaluated the relocation according to the best-interest factors to determine whether relocation was in the best interest of the Child, strongly favoring Father in light of Mother having relocated without approval. However, upon finding the cumulative weight of those factors to weigh in favor of relocation, the court, according to statute, then fashioned a parenting plan "to foster and continue the child's relationship with and access to the other parent" and "assess[ed] the costs of transporting the child for visitation." Tenn. Code Ann. § 36-6-108(d).

As such, the trial court adopted Mother's proposed parenting plan, with modifications. The trial court removed the supervision requirement from Father's parenting time, required that Mother bear transportation costs for visitation, and granted joint decision-making authority to Mother and Father. The court also required that Mother

give Father notice of events concerning the child and that Mother provide Father's information to all pertinent education and healthcare providers.

For our review, we are instructed that "a trial court's determinations of . . . whether modification of a parenting plan serves a child's best interests are factual questions," and "appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings." *Armbrister*, 414 S.W.3d at 692–93. Our Supreme Court has further explained, "A trial court abuses its discretion in establishing a residential parenting schedule 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Id.* at 693 (quoting *Eldridge*, 42 S.W.3d at 88).

Father "does not challenge the fact findings of the trial court in respect to the underlying operative facts." Neither do we find that the evidence preponderates against these findings. We also do not find that the trial court's parenting plan "falls outside the spectrum of rulings that might reasonably result" here. *Id.* Accordingly, we affirm the trial court's determination that the relocation is in the best interest of the Child, and we affirm the trial court's implementation of Mother's parenting plan with modifications.

## II. CONSEQUENCES FOR FAILURE TO COMPLY

Father takes issue with the lack of consequences for Mother's relocation without notice, stating in his brief:

> This appeal is intended to settle the question of law as to whether the notice requirements in the Parental Relocation Act (Tenn. Code Ann. §36-6-108) are rigorous or flaccid. Are there meaningful consequences that flow from the flagrant disregard of the notice requirements or not? The trial court's answer to the question was that it is permissible to ask forgiveness rather than permission.

Father further argues that "[s]uch an outcome completely vitiates the purpose and efficacy of the statute."

While we agree that Mother's behavior showed a "flagrant disregard" for the notice requirements, we differ in our understanding of the purpose and efficacy of the statute. The statute provides a procedure by which relocating parents are to request approval for relocation from both the nonrelocating parent and the trial court. In the end, however, the overarching purpose of the statute is to maintain the best interest of the child. *See* Tenn. Code Ann. § 36-6-401(a).

In a review of the legislative history Mother points out in her brief:

- 14 -

The legislative history of Tenn. Code Ann. §36-6-108 started in 1998, ch. 910, §1 of the 100th General Assembly of the Tennessee Legislature. It has been amended six times since then. [footnote omitted] At no point, and in no amendment to this statute did the legislature ever include language that indicated that the 60-day notice requirement acted as a full-stop for any further analysis or considerations by the trial court.

. . .

In summary, the legislative intent behind the current version of Tenn. Code Ann. §36-6-108 is clearly and unambiguously based on the best interest of the child. Had the legislature intended for the procedural issue of compliance with the 60-day notice requirement to override this standard, they clearly could have and would have stated so.

While we agree with this assessment, we must emphasize here that Mother's actions are not without consequences, and the legislature has not left parents in Father's position without remedy. We presume, as instructed by our Supreme Court, that "the General Assembly is aware of its own prior enactments and knows the state of the law when it enacts a subsequent statute." *Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023). The legislature has provided tools, including those used here, to enforce and maintain the efficacy of these statutes and orders.

The record reveals that the trial court carefully considered Mother's actions, finding in pertinent part:

14. It is undisputed that as a result of the unilateral actions of the Mother in clear violation of the existing Order of the Court and Tennessee law, the Father was denied substantial parenting time with the parties' minor child to which he was entitled.

15. It is undisputed that the Mother left the jurisdiction of the Court with the minor child in violation of the existing Court Order and Tennessee Code Annotated §36-6-108, (The Parental Relocation Statute).

16. It is undisputed that the Father did not know the whereabouts of the minor child and that the Mother and her counsel intentionally refused to notify the Father of the whereabouts of the child after unlawfully leaving the jurisdiction of the Court.

17. It is undisputed that the Father did not speak to the minor child until the 13th day of August 2021.

18. It is undisputed that the Father did not see the minor child again until the 23rd day of December 2021.

. . .

85. The Mother having left the jurisdiction of the Court with the minor child on July 17, 2021, the Father next saw his child on or about December 23, 2021, notwithstanding the clear language of the existing Order of the Court.

88. The Mother having left the jurisdiction of the Court with the minor child made the parenting schedule provided for in this Court's Order of January 29, 2021 impossible.

### A. Criminal Contempt

Because Mother's actions clearly violated the existing parenting plan, Father filed a petition for criminal contempt, and after a hearing, the trial court found that Father had proven contempt for three specific occasions. The court then sentenced Mother as follows:

33. The Court finds that incarceration is appropriate in this matter. The Court orders that the following punishment shall be imposed on Elizabeth Ann Baker Grace Diemoz in accordance with the Sentencing Act of 1989:

The Court notes that it may incarcerate the Mother for up to 10 days for each count of contempt. The Court deems it appropriate to find the Mother guilty of 3 counts of criminal contempt (all 3 related to the denial of Father's parenting time) and any remaining counts of contempt are dismissed. The Court imposes a sentence of 30 days, or 10 days for each of the 3 contempt occurrences; however, 10 days of that sentence is suspended, based upon Mother's full and complete compliance, during the next five (5) years, with the terms and conditions set forth within this judgment.

. . .

35. In sum, the Mother shall serve 20 days, the remainder of her 30-day sentence is suspended pending compliance with the Court's judgment.

The trial court sentenced Mother to the maximum of 10 days per count of criminal contempt, for a total of 30 days, with 10 days suspended, to encourage Mother's compliance with the parenting plan over the next five years.

## B. Best-Interest Factors

As noted, the trial court also weighed Mother's actions against her in determining whether relocation was in the best interest of the Child, especially in Factor E:

> The Court further finds that the consideration pursuant to Tenn. Code Ann. §36-6-108 (c) (2) (E) **strongly** favors the Father.
>
> 1. It is undisputed that the Mother intentionally relocated to Delaware and willfully refused to allow the Father to know the whereabouts of the minor child.
>
> 2. It is undisputed that proper notice was not given under T.C.A. §36-6-108.

Although the cumulative weight of the best interest factors favored relocation, the trial court gave considerable weight to Factor E in favor of Father because of Mother's intentional relocation without notice and refusal to notify Father of the Child's location.

## C. Transportation Costs

The parent relocation statute also provides that the trial court shall assess costs of transportation, specifically:

> In fashioning a modified parenting plan under subdivisions (c)(3) and (4), the court shall consider and utilize available alternative arrangements to foster and continue the child's relationship with and access to the other parent. The court shall also assess the costs of transporting the child for visitation, and determine whether a deviation from the child support guidelines should be considered in light of all factors, including, but not limited to, additional costs incurred for transporting the child for visitation.

Tenn. Code Ann. § 36-6-108(d).

Accordingly, the trial court modified Mother's proposed parenting plan to require that "Mother shall bear transportation costs with the exception of any weekends of parenting time that the Father chooses to exercise within a 3-hour radius of Delaware."

## D. Custodial Interference

Finally, while the details of the referenced criminal proceedings are not a part of this record, the briefs indicate that, in addition to the contempt sanctions, "the State of

Tennessee saw to it that [Mother] was charged with three felony counts of custodial interference[.]"[7]

Mother's brief explains:

[T]he legislature also created the criminal statute T.C.A. § 39-13-306 - Custodial interference, which has been on the books since 1989. Although this is not a tool available to the trial judge in the custodial matter, it is an option available to the aggrieved parent to initiate criminal proceedings against a parent who removes a child from the state in violation of a custodial order. And yet again, this "tool" was used by the Appellant/Father and mother was charged under this statute in criminal court. [The footnote here reads: Mother ultimately pled guilty to a reduced misdemeanor on this charge and was given a suspended sentence.]

As is evident from the above, Mother's violation of the existing parenting plan and the parent relocation statute resulted in significant consequences for Mother. Any further appropriate recourse for not following the notice requirements under the parent relocation statute is an issue for the legislature to address. Ultimately, however, in parenting plan determinations, the "paramount consideration" of the court is not in punishing the parent, but in maintaining the best interest of the child. *Ward*, 2013 WL 3198157, at *16.

### III. OTHER ISSUES

While Mother's statement of issues simply restates Father's single issue on appeal, she appears to argue other issues regarding child support calculations in the body of her brief.

Rule 27 of the Tennessee Rules of Appellate Procedure requires that the brief "shall contain under appropriate headings and in the order here indicated . . . [a] statement of issues presented for review." Tenn. R. App. P. 27(a). *See also* Tenn. R. App. P. 27(b). As such, "[c]ourts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001).

---

[7] Although the referenced criminal proceedings against Mother are not a part of the record before this court, on March 26, 2025, Mother filed a motion for this court to consider post-judgment facts pursuant to Rule 14 of the Tennessee Rules of Appellate Procedure. As stated in her motion, on February 10, 2025, the Montgomery County Criminal Court entered an order vacating the criminal convictions against Mother in case number CC22-CR-269. Because the conviction was never part of the record before this court, and as our opinion in this matter reveals, the conviction was not material to our ruling on the issues on appeal, we find no reason to consider the proposed post-judgment facts. Thus, the motion is denied.

Mother's child support issue was not included in her statement of the issues; therefore, Mother's brief fails to comply with Rule 27 of the Tennessee Rules of Appellate Procedure 27. Accordingly, Mother's issue regarding child support is waived.

## CONCLUSION

For the reasons stated above, we affirm the trial court in all respects and remand to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed one-half to the appellant, Jonathan Garrett Grace, and one-half to the appellee, Elizabeth Ann Baker Grace, for which execution may issue if necessary.

_____

FRANK G. CLEMENT JR., P.J., M.S.